EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | 2015 TSPR 134 |
| | 193 DPR ____ |
| Francisco Toro González | |

Número del Caso: CP-2013-10


Fecha: 2 de octubre de 2015


Oficina de la Procuradora General:

Lcda. Margarita Mercado Echegaray
Procuradora General

Lcda. Karla Pacheco Álvarez
Subprocuradora General

Lcda. Minnie H. Rodríguez López
Procuradora General Auxiliar


Abogado del Querellado:

Lcdo. David L. Torres Vélez


Comisionada Especial:

Hon. Eliadís Orsini Zayas


Materia: Conducta Profesional - La suspensión de la notaría será efectiva el 6 de octubre de 2015, fecha en que se le notificó al abogado de su suspensión inmediata de la notaría.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Francisco Toro González        CP-2013-10

*PER CURIAM*

En San Juan, Puerto Rico, a 2 de octubre de 2015.

En esta ocasión nos corresponde sancionar a un abogado por incumplir con los cánones 18 y 35 del Código de Ética Profesional, 4 LPRA Ap. IX, y con ciertas disposiciones de la Ley Notarial de Puerto Rico (Ley Notarial), Ley Núm. 2-1987, 4 LPRA sec. 2001 <u>et seq</u>., y del Reglamento Notarial (Reglamento), 4 LPRA Ap. XXIV.

I

El Lcdo. Francisco Toro González (licenciado Toro González o querellado) fue admitido al ejercicio de la abogacía el 20 de abril de 1979 y a la notaría el 31 de mayo de 1979. El 7 de junio

de 2007, la Sra. María del C. Rosa Matos y el Sr. Felipe D. Rosa Matos (en conjunto, querellantes) presentaron una queja contra el licenciado Toro González. Según el expediente ante nuestra consideración, así como el Informe de la Comisionada Especial, los hechos que dieron lugar a este procedimiento disciplinario son los que se exponen a continuación.

Las señoras Yolanda Rosa Cruz y Carmen E. Rosa Cruz contrataron al licenciado Toro González para que gestionara un expediente de dominio en representación de los herederos del Sr. Erasmo Rosa y la Sra. Aurea Cruz (Sucesión Rosa- Cruz). La Sucesión Rosa-Cruz estaba compuesta por Yolanda, Carmen, Radamés, Amelia, Trinidad, Erasmo, Gilberto, Cresencia, Aurea, Miriam Elsie y la sucesión de Felipe Neri Rosa Cruz,[1] debido a que este último había fallecido. La sucesión de Felipe Neri Rosa Cruz estaba compuesta por su viuda, la Sra. Heroína Matos Rivera, y sus hijos: los querellantes (María del Carmen y Felipe), Belisa, Glenda Zoe y Jelitza (Sucesión de Felipe Neri Rosa Cruz).[2] Además de lo relativo al expediente de dominio, la señora Yolanda le expresó al licenciado Toro González su deseo de hacer unos movimientos de terreno en el predio donde residía, que era una propiedad que sus

---

[1] Surge del expediente que en algunos documentos se refieren al hermano fallecido como Felipe Nery Rosa Cruz. Sin embargo, en la Resolución del Tribunal de Primera Instancia referente a su Declaratoria de Herederos se refieren a él como Felipe Neri Rosa Cruz. *Informe* de la Oficina de Inspección de Notarías, Anejo III.
[2] Según surge de la Resolución del 1 de febrero de 2007 en el caso Civil Núm. KJV-2007-0080.

padres le habían donado en vida. El querellado le informó que para obtener los permisos necesitaba un documento mediante el cual los demás herederos reconocieran la donación, ya que la propiedad estaba ubicada en la finca objeto del caudal hereditario. Ésta le indicó que los otros miembros de la sucesión la reconocían.

A base de la información ofrecida, el 2 de marzo de 2007 la señora Yolanda suscribió una declaración jurada ante el querellado bajo el affidavit núm. 14,563. Declaró que junto a sus hermanos y sobrinos era condueña de una finca en el Barrio Tallaboa Alta, Sector La Moca de Peñuelas, Carretera Estatal 391, kilómetro 1, hectómetro 2, donde ubicaba una edificación que le donaron sus padres, el Sr. Erasmo Rosa y la Sra. Aurea Cruz, ya fallecidos. Acreditó lo anterior mediante una escritura sobre titularidad otorgada por todos los herederos (hermanos y sobrinos) que unió a la declaración. Asimismo, como condueña, autorizó a su hija, Raquel López Rosa, a realizar movimientos de tierra para construir un terraplén en los terrenos adyacentes a su edificación.

El 19 de marzo de 2007, el licenciado Toro González preparó una certificación dirigida al Departamento de Recursos Naturales. Informó que estaba a cargo del otorgamiento de una escritura en la cual los miembros de la Sucesión Rosa-Cruz reconocían que la señora Yolanda era dueña de la porción de terreno donde se interesaba realizar un movimiento de tierra. Sin embargo, la

certificación dispone que para completar dicha escritura faltaba obtener la firma de varios herederos.

Posteriormente, el 12 de abril de 2007 se otorgó la Escritura núm. 22 de Reconocimiento de Titularidad (Escritura núm. 22) ante el licenciado Toro González. En la misma comparecieron la mayoría de los miembros de la Sucesión Rosa-Cruz. En cuanto a la Sucesión de Felipe Neri Rosa Cruz, inicialmente se hizo constar que comparecía representada por la Sra. Jelitza Rosa Matos como su mandataria verbal, lo cual se acreditaría donde y cuando fuere necesario. Se indicó que ambas sucesiones eran herederas del Sr. Erasmo Rosa y la Sra. Aurea Cruz y que reconocían la donación de la edificación que éstos le hicieron en vida a su hija, la señora Yolanda. Como consecuencia, renunciaron a cualquier reclamo de herencia sobre la edificación. El licenciado Toro González señaló que le hizo a los otorgantes las advertencias de ley necesarias y correspondientes. Además, al final de la escritura, luego de la firma de los otorgantes y de que el notario diera fe bajo su firma, signo, sello y rúbrica, se añadió lo siguiente:

> "[s]e aclara esta para hacer constar que los aquí comparecientes de apellidos Rosa Matos, [Sucesión Felipe Neri Rosa Cruz] y los cuales están representados en esta por su hermana Jelitza Rosa Matos no comparecen ni suscriben esta, entiéndase aclarada esta escritura a ese solo efecto, repito la fe".[3]

---

[3] Escritura Núm. 22 sobre Reconocimiento de Titularidad, pág. 4.

Cabe mencionar que la Escritura núm. 22 no está iniciada ni firmada por la señora Jelitza ni por algún otro miembro de la Sucesión de Felipe Neri Rosa Cruz.

Finalmente, el 18 de mayo de 2007 el licenciado Toro González, en representación de la Sucesión Rosa-Cruz, radicó una petición sobre Expediente de Dominio.[4] Asimismo, el 29 de mayo de 2007 el Departamento de Recursos Naturales concedió un permiso simple a la señora Yolanda para la remoción de material de la corteza terrestre con el propósito de realizar mejoras al camino existente y crear un terraplén.

El 7 de junio de 2007, los querellantes, miembros de la Sucesión de Felipe Neri Rosa Cruz, presentaron la queja objeto de esta querella. En esencia, alegaron que contrataron al licenciado Toro González para realizar unas gestiones relacionadas con una herencia, incluyendo un expediente de dominio. Expusieron que éste otorgó una escritura de reconocimiento de titularidad que la Sucesión de Felipe Neri Rosa Cruz no suscribió ni autorizó, a pesar de que la edificación descrita en la escritura, así como el terreno adyacente -que no se incluyó en la misma pero sobre el cual se está haciendo el movimiento de tierra- eran parte de la herencia que no había sido dividida. Indicaron que no nombraron a Jelitza Rosa Matos como su

---

[4] En la petición se incluyó al Sr. Felipe Neri Rosa Cruz como uno de los peticionarios. El 16 de marzo de 2009, el Tribunal de Primera Instancia, Sala de Ponce, declaró con lugar la petición y ordenó al Registrador de la Propiedad a inscribir el inmueble a favor de la Sucesión Rosa-Cruz, la cual incluye la Sucesión de Felipe Neri Rosa Cruz.

mandataria verbal. Además, con relación al trámite del expediente de dominio, señalaron que el licenciado Toro González no se había comunicado con la Sucesión de Felipe Neri Rosa Cruz para informarles sobre el procedimiento para el cual se le contrató y se le adelantó cierta cantidad de dinero.

En su contestación a la queja, el licenciado Toro González comenzó explicando que ésta tenía como génesis la existencia de una comunidad hereditaria indivisa desde los años 1930, a la cual los querellantes pertenecen por derecho de representación, que lo contrató para realizar un expediente de dominio. Indicó que cuando se reunió con las señoras Carmen y Yolanda éstas le expresaron que sus padres le habían donado a la señora Yolanda la casa donde ella vivía, así como un predio de terreno, y que los comuneros reconocían dicha donación. En vista de ello procedió a redactar la escritura de reconocimiento de título para que la señora Yolanda pudiera solicitar el permiso correspondiente para hacer el referido movimiento de terreno y se la entregó para que todos los herederos la examinaran.[5] Aceptó que el reconocimiento de titularidad se realizó con los miembros de la Sucesión Rosa-Cruz que comparecieron y que a los miembros de la Sucesión de Felipe Neri Rosa Cruz se les eliminó de la escritura porque no comparecieron a firmar.

---

[5] Señaló que a la querellante se le envió por fax, según solicitado por ella.

El querellado incluyó como anejos una copia de la radicación del trámite para el expediente de dominio,[6] una copia de la declaratoria de herederos de la Sucesión de Felipe Neri Rosa Cruz, una carta relacionada a la solicitud de movimiento de terreno y una declaración jurada de la señora Yolanda otorgada el 3 de julio de 2007 ante el notario Norberto Colón Rodríguez bajo el affidavit núm. 6,812. En ésta, la señora Yolanda expresó que su padre, el Sr. Erasmo Rosa, le separó una porción de terreno a los miembros de la sucesión que así lo deseaban y que la suya se marcó por varillas según una mensura realizada por el Ingeniero Juan E. Torres Lao. Sin embargo, reconoció que la finca no había sido segregada y señaló, entre otras cosas, que los querellantes -sus sobrinos- no comparecieron a firmar la Escritura núm. 22 a pesar de que conocían que se llevaría a cabo dicho acto.

Los querellantes reaccionaron a la contestación del licenciado Toro González y expusieron, entre otras cosas, que este último nunca le envió a la querellante, la Sra. María del C. Rosa Matos, la escritura de reconocimiento de titularidad vía facsímil para que la examinara. Solicitaron que se declarara nula dicha escritura.

---

[6] Respecto al expediente de dominio, el licenciado Toro González señaló que le solicitó $100.00 a todos los comuneros para el trámite y que los querellantes no aportaron. Sin embargo, posteriormente aclaró que los querellantes sí aportaron los $100.00 dólares solicitados y que en una vista en el procedimiento de expediente de dominio indicó que estaba dispuesto a devolverles el dinero. Incluyó la minuta de la vista como anejo en su contestación al *Informe* de la Directora de Inspección de Notarías (ODIN).

El 28 de septiembre de 2009, la otrora Directora de la Oficina de Inspección de Notarías (ODIN), Lcda. Lourdes I. Quintana Lloréns, presentó ante nosotros un *Informe*. Luego de exponer los hechos que no están en controversia, concluyó que el licenciado Toro González autorizó la Escritura núm. 22 y que de la misma no surge referencia alguna a la falta de inscripción de la finca a favor de los causantes y la necesidad de tramitar el expediente de dominio.

Además, aunque el licenciado Toro González reconoce que la señora Jelitza no compareció a firmar la escritura, no eliminó del texto su nombre ni las demás referencias a su participación como alegada representante de la Sucesión de Felipe Neri Rosa Cruz. Señaló que de la nota al final de la escritura no surge claramente que ella no compareció a firmarla a pesar de que ello le constaba. Tampoco se incluyó la anuencia de los otorgantes a la presentación posterior de la prueba de capacidad representativa ni la advertencia referente a la eficacia en suspenso. Indicó que el licenciado Toro González conocía que, dado el fallecimiento del Sr. Felipe Neri, sus herederos tenían que prestar su consentimiento y aprobación en cuanto al reconocimiento de titularidad por tener derecho sobre la propiedad.

Por lo anterior, la ODIN entendió que el querellado no actuó de conformidad con las disposiciones de la Ley Notarial, 4 LPRA secs. 2001 et seq., y el Reglamento, 4

LPRA Ap. XXIV. Por último, señaló que el querellado también violó el Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, al autorizar un testimonio a sabiendas de que lo declarado era falso.[7] Recibida la contestación del licenciado Toro González, el 15 de enero de 2010 referimos el *Informe* a la Procuradora General para que presentara la querella correspondiente. En la misma, se formularon los siguientes cargos:

### Cargo I

El Lcdo. Francisco Toro González incurrió en conducta constitutiva de violación a los preceptos contenidos en el Canon 35 de Ética Profesional, 4 LPRA Ap. IX, C. 35, al autorizar el testimonio número 14,563 a sabiendas [de] que contenía hechos que no eran ciertos. El notario conocía que no había sido otorgada la escritura de titularidad sobre una propiedad que se menciona en el documento y que esta no podía ser unida a la declaración porque no existía a dicha fecha. La declaración jurada es de 2 de marzo de 2007 y fue autorizada con anterioridad a la Escritura Núm. 22 de 12 abril de 2007.

### Cargos II, III, IV y V

El Lcdo. Francisco Toro González incurrió en conducta constitutiva de violación al Canon 18 de Ética Profesional, 4 LPRA Ap. IX, C. 18, al Artículo 2 (fe pública notarial), Artículo 14 y al Artículo 16 de la Ley Notarial de Puerto Rico, 4 LPRA secs. 2002, 2032, 2034. Esto debido a que no se rindió una labor idónea y competente en cuanto a la autorización de la Escritura Núm. 22 por esta adolecer de defectos que impiden su eficacia y validez. Considerando muy especialmente el hecho de que el propósito del notario es la autorización de documentos

---

[7] En el *Informe*, la Directora de la ODIN también indicó que las alegaciones respecto al procedimiento de expediente de dominio se tornaron académicas debido a que el Tribunal de Primera Instancia declaró con lugar la petición. Por otra parte, entendió que cualquier reclamación que pudieran tener los querellantes con relación a sus derechos hereditarios sobre la edificación y terrenos en controversia se debía dilucidar en un procedimiento civil ordinario.

jurídicamente eficaces y legales según señala el Artículo 14 de la Ley Notarial. A su vez y como parte de las deficiencias señaladas en el documento por la ODIN la otorgante Jelitza Rosa Matos no firmó ni inició la escritura, requisito esencial del instrumento público que es causa de nulidad, constituye una violación de la fe pública y viola el Artículo 16 de la Ley Notarial. Indicamos además que el documento no contiene advertencia ni señalamiento alguno de que el predio de terreno al que se refiere no consta inscrito, de la necesidad de presentar un expediente de dominio y las consecuencias relacionadas con estos hechos.

## Cargo VI

El Lcdo. Francisco Toro González incurrió en violación a la Regla 28 del Reglamento Notarial, 4 LPRA Ap. XXIV, R. 28, al no acreditar la capacidad representativa de Jelitza Rosa Matos al momento de la autorización de la Escritura Núm. 22 como tampoco consignó expresamente en el documento tal hecho y que los comparecientes han dado su anuencia para que la escritura sea autorizada y para la presentación en fecha posterior de la prueba documental de tal capacidad. Tampoco se consignó en el documento que se realizaron las advertencias correspondientes sobre la eficacia en suspenso de la escritura.

Luego de que este Tribunal le concediera una prórroga, el querellado presentó su contestación a la querella. Señaló que la declaración jurada otorgada por la señora Yolanda ante él, así como la Escritura núm. 22, se prepararon conforme a las representaciones que le hicieron los querellantes y las señoras Yolanda y Carmen. En cuanto a la violación al Canon 35 del Código de Ética Profesional, supra, explicó que si en la declaración se hizo referencia a la escritura de reconocimiento de titularidad "tiene que haber sido que ya la escritura estaba firmada por todos los que otorgaron la misma

excepto, los querellantes", y que estaba abierta en espera de que comparecieran éstos y la firmaran.[8]

Respecto a la violación a la Ley Notarial, supra, y al Reglamento, supra, expresó que la eficacia y validez de la escritura era únicamente a los efectos de conseguir la autorización del Departamento de Recursos Naturales para el movimiento de terreno y que ésta se consiguió. Por otro lado, destacó que en la escritura se aclaró que la Sucesión de Felipe Neri Rosa Cruz no compareció y que ésta incluía a la señora Jelitza, por lo que no hacía falta acreditar su capacidad representativa ni advertir sobre la eficacia en suspenso de la escritura. Además, no hacían falta las advertencias relativas a la falta de inscripción del terreno y la necesidad de tramitar un expediente de dominio porque el documento se preparó para solicitar el permiso en Recursos Naturales. Por último, razonó que si hay algún señalamiento con respecto a los Cánones de Ética Profesional ello es resultado de: la conducta y la representación que le hicieron los querellantes de estar de acuerdo con la Escritura núm. 22 y la información brindada por las señoras Yolanda y Carmen, quienes están dispuestas a dejar sin efecto dicha escritura.

El 31 de marzo de 2014 nombramos a la Hon. Eliadis Orsini Zayas como Comisionada Especial para que recibiera la prueba y nos rindiera un informe con las determinaciones de hechos y las recomendaciones que

---

[8] *Contestación a querella*, pág. 3.

estimara pertinente. Contando con el memorial de derecho presentado por las partes, la Comisionada Especial emitió su Informe. Concluyó que todos los cargos presentados contra el querellado fueron probados con prueba clara, robusta y convincente.[9]

Examinemos la normativa aplicable a este asunto.

II

En nuestro ordenamiento, el notario ejerce una función pública que requiere cuidado, dedicación y celo profesional. Ello porque se le confiere la autoridad para dar fe y autenticidad a los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen. Art. 2 de la Ley Notarial, 4 LPRA sec. 2002. Al autorizar dichos documentos el notario se asegura que cumplen con todas las formalidades de ley requeridas, que son legales y verdaderos, y que se trata de transacciones válidas y legítimas. In re González Maldonado, 152 DPR 871, 895 (2000).

Como parte de su función debe "recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos". Íd. A su vez, y acorde con el rol del notario en esta jurisdicción, tiene

---

[9] La Comisionada Especial hace ciertas observaciones en cuanto al trámite del expediente de dominio; sin embargo, en el *Informe* de la ODIN se indicó que las alegaciones respecto a ese procedimiento se habían tornado académicas ya que el Tribunal de Primera Instancia declaró con lugar la petición. Por lo anterior, en la querella la Procuradora General no hizo ningún señalamiento ético al respecto y entendemos que no procede que evaluemos la conducta del querellado con relación a ese asunto.

que asegurarse de obtener el consentimiento informado de los otorgantes haciéndoles todas las explicaciones, aclaraciones y advertencias que sean necesarias. In re Jiménez Brackel, 148 DPR 287, 295 (1999). En síntesis, al autorizar una escritura el notario tiene cuatro deberes principales:

> (i) indagar la voluntad de los otorgantes; (ii) formular la voluntad indagada; (iii) investigar ciertos hechos y datos de los que depende la eficacia o validez del negocio; y (iv) darles a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y consecuencias del negocio, y se den cuenta de los riesgos que corren en celebrarlo. In re Davison Lampón, 159 DPR 448, 461 (2003). Véase Chévere v. Cátala, 115 DPR 432 (1984).

Para determinar qué se le debe explicar y advertir a los otorgantes -en aras de que estén informados- se deberá aplicar el derecho positivo y la jurisprudencia considerando, a su vez, el contenido del negocio y las estipulaciones a suscribirse. In re Torres Alicea, 175 DPR 456, 461 (2009). En cuanto a las advertencias, el Art. 15(f) de la Ley Notarial, 4 LPRA sec. 2033, dispone que en la escritura, el notario deberá consignar, entre otras cosas, "[e]l haberles hecho de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes. No obstante, se consignarán en el documento aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente".

Este Tribunal ha reiterado que el notario está obligado a cumplir con la Ley Notarial, supra, su Reglamento, supra, y los Cánones del Código de Ética Profesional, 4 LPRA Ap. IX. In re Nieves Nieves, 171 DPR 843, 848 (2007); In re Davison Lampón, supra, pág. 455; In re Montañez Miranda, 157 DPR 275, 282 (2002); In re González Maldonado, supra. Estos últimos disponen las normas mínimas de conducta que rigen la profesión de la abogacía. In re Soto Charraire, 186 DPR 1019, 1027 (2012); In re Peña, Santiago, 185 DPR 764, 778 (2012). El incumplimiento con las fuentes de obligaciones anteriormente mencionadas exponen al abogado a las sanciones disciplinarias que este Tribunal estime procedentes. In re Fontánez Fontánez, 181 DPR 407, 418 (2011); In re Davison Lampón, supra; In re González Maldonado, supra.

El Canon 35 de Ética Profesional, supra, dispone que: "[e]l abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávits u otros documentos, y al presentar causas". Véase In re Muñoz Fernós, 184 DPR 679, 686 (2012). Un notario que falta a la veracidad de los hechos incumple con el deber de sinceridad y honradez que exige el Canon 35, supra, y quebranta la fe pública notarial, independientemente de que sea intencional o no. In re Peña, Santiago, supra, pág. 779; In re Muñoz Fernós, supra, págs. 686-687; In re Montañez Miranda, supra, págs. 281-282. Asimismo, a pesar

de que el Art. 56 de la Ley Notarial, 4 LPRA sec. 2091, y la Regla 67 del Reglamento, 4 LPRA Ap. XXIV, establecen que un notario no asume responsabilidad por el contenido del documento cuyas firmas legitime, este Tribunal ha determinado que cuando un notario tiene conocimiento de que el contenido del mismo es falso, no debe autorizarlo, pues de hacerlo viola el Canon 35 del Código de Ética Profesional, supra. In re Muñoz Fernós, supra, pág. 687; In re Montañez Miranda, supra, págs. 284-285.

Por otro lado, el Canon 18 del Código de Ética Profesional, supra, le impone al abogado "el deber de ser competente, cuidadoso y diligente al tramitar los asuntos que su cliente le encomienda y al defender los intereses de este último". In re Soto Charraire, supra. Cuando un notario no cumple con las disposiciones de la Ley Notarial, supra, y el Reglamento, supra, viola el referido canon al no ejercer la profesión con el cuidado y la prudencia requerida. In re Muñoz Fernós, supra, pág. 685; In re Aponte Berdecía, 161 DPR 94, 106 (2004).

En lo pertinente a la querella ante nuestra consideración, el Art. 14 de la Ley Notarial, supra, establece que: "[l]os notarios redactarán las escrituras públicas de acuerdo con la voluntad de los otorgantes y adaptándola a las formalidades jurídicas necesarias para su eficacia". A su vez, el Art. 16 de la Ley Notarial, supra, exige que los otorgantes y testigos de una escritura la firmen y estampen sus iniciales al margen de

cada una de sus páginas. Véase Regla 34 del Reglamento, 4 LPRA Ap. XXIV. Está firmemente establecido que la firma es un requisito fundamental porque demuestra que el otorgante está de acuerdo con el contenido de la escritura. Véase In re Fontánez Fontánez, supra, pág. 419; In re Nieves Nieves, supra, pág. 852; In re González Maldonado, supra, pág. 914. Según el Art. 34 de la Ley Notarial, 4 LPRA sec. 2052, y la Regla 45 del Reglamento, 4 LPRA Ap. XXIV, la falta de la firma de uno de los otorgantes o testigos acarrea la nulidad de la escritura, mientras que la ausencia de las iniciales causa su anulabilidad. Por último, la Regla 28 del Reglamento, supra, establece que:

> El carácter representativo de un compareciente deberá ser acreditado al notario mediante documento fehaciente, en cualquier momento antes del otorgamiento, salvo que exista la conformidad expresa de los demás comparecientes para que sea acreditado en momento posterior.
>
> […]
>
> Cuando no fuere acreditada la capacidad representativa al momento de la autorización, el notario deberá consignar expresamente en la escritura tal hecho y que los comparecientes han dado su anuencia para que la escritura sea autorizada y para la presentación en fecha posterior de la prueba documental de tal capacidad. En tal caso el notario consignará en la escritura que hizo a todas las partes la advertencia sobre la eficacia en suspenso de la escritura. Véase Art. 18 y 19 de la Ley Notarial, 4 LPRA secs. 2036 y 2037; In re González Maldonado, supra, págs. 903-905.

Apliquemos este marco legal a los hechos ante nuestra consideración.

III

En el primer cargo se le imputa al querellado que violó el Canon 35 del Código de Ética Profesional, supra, al autorizar el testimonio núm. 14,563 a pesar de conocer que incluía hechos falsos. Ello porque en dicho testimonio de 2 de marzo de 2007 se acreditó cierta información mediante una escritura que se otorgó en una fecha posterior, específicamente el 12 de abril de 2007. Se alega que ambos documentos fueron autorizados por el querellado por lo que éste claramente sabía que al momento en que se suscribió el testimonio núm. 14,563, la escritura de reconocimiento no se había otorgado.

El licenciado Toro González alega que si se hizo referencia a la escritura en la declaración jurada fue porque ya estaba preparada y firmada por los que la otorgaron.[10] Arguyó que la escritura estaba abierta en espera de la firma de la Sucesión de Felipe Neri Rosa Cruz, cuyos miembros le habían indicado que la firmarían.[11] Surge de su propia explicación que, al momento en que autorizó el testimonio, estaba esperando que los sobrinos de la señora Yolanda comparecieran para firmar el documento. A pesar de lo anterior, en el testimonio se expresó que la escritura había sido otorgada por todos los herederos (hermanos y sobrinos). En consecuencia, no podía autorizar un testimonio que contenía un hecho falso

---

[10] *Contestación a la Querella*, págs. 3-4.
[11] Íd.

conocido por él. Al hacerlo, quebrantó el deber de sinceridad y honradez exigido e incurrió en una violación al Canon 35, supra.

Los restantes cargos se concentran en las deficiencias encontradas en la Escritura núm. 22 que afectaron su eficacia y validez. Una de éstas se relaciona con la ausencia de ciertas advertencias en la escritura, particularmente que el predio de terreno objeto de reconocimiento no constaba inscrito a favor de los causantes, de la necesidad de presentar un expediente de dominio y las consecuencias relacionadas con estos hechos. El querellado indica que al momento en que se otorgó la escritura no había interés en relacionarlo con un expediente de dominio porque el propósito era adquirir el permiso del Departamento de Recursos Naturales.

Según expresado anteriormente, la necesidad de hacer constar una advertencia porque se estima importante dependerá del acto, contrato o negocio jurídico que se vaya a realizar mediante el instrumento público, así como del significado total de las estipulaciones a suscribir. S. Torres Peralta, El Derecho Notarial Puertorriqueño, STP, 1995, 8.31; In re Torres Alicea, supra, pág. 461. Asimismo, hemos reiterado que el notario tiene el deber de conocer el estado registral de la propiedad objeto de la escritura para poder suplirles a los otorgantes las explicaciones, aclaraciones y advertencias necesarias de forma que comparezcan en un estado de conciencia

informada. In re Torres Alicea, supra, págs. 460-461; Feliciano v. Ross, 165 DPR 649, 659 (2005); In re Jiménez Brackel, supra, págs. 294-295.

En esencia, por medio de la Escritura núm. 22 de Reconocimiento de Titularidad la Sucesión Rosa-Cruz aceptó la donación realizada por los causantes a la señora Yolanda y renunció a cualquier reclamo sobre dicha edificación. Examinada la situación en la que se encontraba la propiedad objeto del reconocimiento -una finca indivisa no inscrita que formaba parte de un caudal hereditario- el querellado debió detallar expresamente las advertencias relacionadas a la falta de inscripción de la finca en el Registro de la Propiedad a favor de los causantes y la necesidad de tramitar un expediente de dominio con las consecuencias que podría acarrear el resultado de dicho procedimiento. Al no hacerlo, violó la fe pública notarial, supra, así como el Canon 18 del Código de Ética Profesional, supra. En cuanto a lo alegado por el querellado con relación al propósito de la escritura, de ésta no surge mención de que el reconocimiento fuera sólo para la obtención de un permiso. En cambio, de las estipulaciones suscritas lo que surge es que se reconoce la titularidad de la señora Yolanda sobre la propiedad en controversia, acto que conllevaba ciertas advertencias sobre el estado de la misma y cómo éste podía afectar el título reconocido.

Otra deficiencia de la Escritura núm. 22 se refiere a la falta de comparecencia por parte de la señora Jelitza como representante de la Sucesión de Felipe Neri Rosa Cruz. En la escritura se hace constar en varias ocasiones que la señora Jelitza comparecía en representación de dicha sucesión. Sin embargo, no firmó ni inició la escritura. Tampoco se consignó expresamente que, debido a que no acreditó su capacidad representativa al momento en que se otorgó, los comparecientes habían dado su anuencia para que la escritura fuera autorizada y que la prueba documental de tal capacidad se presentara en una fecha posterior, poniendo en suspenso la eficacia de la misma.

Habiendo examinado la Escritura núm. 22 y constatado la falta de firma e iniciales de la señora Jelitza, el querellado incumplió con el Art. 16 de la Ley Notarial, <u>supra</u>, al no incluir la firma e iniciales de los miembros de la Sucesión de Felipe Neri Rosa Cruz en una escritura de reconocimiento de titularidad, falta que conlleva la nulidad de la misma.[12]

Ahora bien, el licenciado Toro González alega que en la escritura aclaró, mediante una nota, que la señora Jelitza no compareció, lo cual es válido según lo dispuesto en el Art. 32 de la Ley Notarial, 4 LPRA sec. 2050.[13] En vista de lo anterior, señala que no era

---

[12] Esto porque, al faltar la firma e iniciales de la señora Jelitza en la Escritura núm. 22, ningún miembro de la Sucesión de Felipe Neri Rosa Cruz compareció al acto.
[13] *Memorial de Derecho*, pág. 3.

necesario consignar lo relacionado a la falta de la acreditación de capacidad.

El Art. 32 de la Ley Notarial, supra, incluye uno de los métodos que le permiten al notario suplir algún dato que haya omitido o corregir algún defecto luego de autorizado el documento.[14] Consiste en subsanar el error mediante adiciones, apostillas, entrerrenglonaduras, raspaduras y tachaduras, las cuales deberán ser salvadas con la firma de los que deben suscribir el documento y del notario o se tienen por no puestas. 4 LPRA sec. 2050. Véase In re Godinez Morales, 161 DPR 219, 251-252 (2004).

Considerando el rol del notario en nuestro ordenamiento, concluimos que el querellado no ejerció su labor con el celo profesional y la diligencia que es requerida al hacer constar en la Escritura núm. 22 en numerosas ocasiones que la Sucesión de Felipe Neri Rosa Cruz estaba representada por la señora Jelitza y, al ésta no comparecer, tratar de aclararlo mediante la siguiente nota: "[s]e aclara esta para hacer constar que los aquí comparecientes de apellidos Rosa Matos, y los cuales están representados en esta por su hermana Jelitza Rosa Matos no comparecen ni suscriben esta, entiéndase aclarada esta escritura a ese solo efecto, repito la fe".[15] Coincidimos

---

[14] Otros métodos que provee la Ley Notarial, supra, para subsanar defectos son emitir un acta de subsanación, una escritura de rectificación o por medio de una diligencia subsanatoria. Véase Art. 29 de la Ley Notarial, 4 LPRA sec. 2047; Regla 39 del Reglamento, 4 LPRA Ap. XXIV. Véase, además, In re Godinez Morales, 161 DPR 219 (2004).

[15] Escritura núm. 22 sobre Reconocimiento de Titularidad, pág. 4.

con la ODIN respecto a que la nota no aclara que en efecto la señora Jelitza no compareció a suscribir la misma ni en su capacidad personal ni en calidad de representante.

Aun si para efectos de argumentación se entendiera que el contenido de la nota fue suficiente para aclarar el asunto, la misma adolece de múltiples defectos. El licenciado Toro González aceptó que en marzo de 2007 ya la escritura estaba firmada por los otorgantes y que sólo faltaban los miembros de la Sucesión de Felipe Neri Rosa Cruz.[16] Sin embargo, explicó que no pudieron esperar más por las firmas y en abril cerró la escritura aclarando la falta de comparecencia. El problema es que, estando la escritura firmada por el resto de la Sucesión Rosa-Cruz, añadió la nota aclaratoria entre la última línea del instrumento y la primera firma, sin que ésta fuera aprobada y salvada por los otorgantes según requiere el Art. 32 de la Ley Notarial, supra. Según la Prof. Sarah Torres Peralta, al analizar el Art. 32 de la Ley Notarial, supra:

> no se puede adicionar texto en un espacio en blanco entre la última línea del instrumento y la primera firma estampada y entonces descansar en que el documento estaba firmado. En tal caso, sería nula la adición ya que necesariamente se requiere para su validez la expresión de aprobación específica por parte de todos los otorgantes y la repetición de la fe notarial. S. Torres Peralta, El Derecho Notarial Puertorriqueño, op. cit., 13.7.

---

[16] Contestación a Querella, pág. 3-5.

En cualquier caso, el licenciado Toro González tenía que añadir la nota después de la firma de los otorgantes, éstos declarar expresamente que aceptaban la adición, firmar nuevamente y el notario repetir la fe notarial y firmar. Íd. En vista de que añadió la nota en un espacio en blanco entre la última línea del instrumento y la primera firma, la aclaración realizada mediante nota se tiene por no puesta.

Aún más significativo, el querellado no podía utilizar dicha nota para salvar la incomparecencia de varios herederos al acto de otorgamiento de una escritura de reconocimiento de titularidad sobre una propiedad que al momento formaba parte del caudal hereditario. Éstos evidentemente eran partes indispensables al tener un interés propietario sobre la edificación alegadamente donada, lo cual afecta la validez y eficacia de la escritura. Véase Vega Montoya v. Registrador, 179 DPR 80 (2010). Máxime cuando la Comisionada Especial señaló en su Informe que no surge algún otro documento, privado o suscrito ante un notario, que establezca dicha donación.[17] En cambio, lo que procedía era que el licenciado Toro González otorgara una nueva escritura donde comparecieran todos los herederos. In re González Maldonado, supra, pág. 915.

A pesar de que el licenciado Toro González alegó durante el procedimiento que la eficacia y validez del

---

[17] Informe de la Comisionada Especial, pág. 18.

instrumento era únicamente para conseguir el permiso del Departamento de Recursos Naturales, eso no lo exime de asegurarse que al impartir su fe pública lo hiciera sobre un documento eficaz y acorde con las formalidades requeridas por la ley. Cabe mencionar que la explicación del licenciado Toro González con respecto a cómo manejó las firmas de los otorgantes también denota que, de haber conseguido las firmas según se lo proponía, hubiese infringido el Art. 28 de la Ley Notarial, 4 LPRA sec. 2046, debido a que tenía que recibir personalmente la firma de la señora Jelitza o la de todos los demás herederos dentro del mismo día natural del otorgamiento y no semanas después según él mismo expresó. Además, el querellado dio fe en la escritura de que se otorgó en un solo acto aun cuando conocía que no obtuvo todas las firmas necesarias ese día.[18]

Por todo lo expuesto, concluimos que se probó mediante prueba clara, robusta y convincente que el querellado violó los cánones 18 y 35 del Código de Ética Profesional, supra, así como los artículos 2, 14 y 16 de la Ley Notarial, supra, cumpliendo así con el criterio probatorio requerido en estos procedimientos disciplinarios. In re Fontánez Fontánez, supra, pág. 417; In re Caratini Alvarado, 153 DPR 575, 585 (2001).

---

[18] Cabe mencionar que no estamos penalizando al querellado por la falta de unidad de acto. Por otro lado, debido a que la señora Jelitza no compareció en representación, no es necesario dilucidar lo relativo a la acreditación posterior de la capacidad representativa y a las advertencias que ello requería.

IV

Al imponer una sanción disciplinaria este Tribunal considera diversos factores, ya sea como atenuantes o agravantes. Algunos de estos son: el historial previo del licenciado; su reputación en la comunidad; si la conducta se realizó con ánimo de lucro; si aceptó los cargos imputados; su arrepentimiento; y cualquier otra consideración que se estime pertinente. In re Peña, Santiago, supra, pág. 787; In re Muñoz Fernós, supra, pág. 688.

Surge del Informe de la Comisionada Especial que el querellado reiteró que con sus acciones sólo intentaba ayudar a sus clientes; que la comunidad hereditaria mantiene rencillas entre ellos; y que con su actuación no causó daño a nadie.[19] También señala que el proceso disciplinario ante sí se ventiló con bastante celeridad porque el querellado cooperó con los procedimientos. Asimismo, el licenciado Toro González presentó varias declaraciones juradas como prueba de reputación,[20] de las

---

[19] El querellado alega que entre los comuneros se comenzó un proceso de segregación y lotificación, en el cual preliminarmente se les reconoció un derecho hereditario sobre uno de los lotes. Incluyó como anejo el plano preliminar que especifica la división de los lotes. *Memorial de Derecho*, pág. 4.

[20] El 12 de enero de 2015, la Comisionada Especial rindió su Informe. El 22 de enero de 2015, el querellado presentó una moción con el propósito de objetar dicho Informe a tenor con la Regla 14 (l) del Reglamento de este Tribunal, 4 LPRA Ap. XXI-B, R. 14(l). En respuesta a dicha moción, el 26 de junio de 2015 emitimos una Resolución concediéndole al licenciado Toro González un término de 15 días para que presentara las declaraciones juradas de los testigos de reputación que se proponía utilizar durante el procedimiento disciplinario. El 6 de julio de 2015, el querellado solicitó que reconsideráramos dicha Resolución. El 24 de julio de 2015 denegamos la reconsideración y le concedimos al querellado un término de 5 días para que presentara las declaraciones juradas. Posteriormente, el 27 de julio de 2015 el

cuales surge que el querellado goza de buena reputación en la comunidad y que su conducta ha sido ejemplar y honrada.

Cabe señalar que el querellado no aceptó que cometió las violaciones señaladas y que sus acciones y omisiones provocaron la nulidad de la Escritura núm. 22. No obstante, en vista de su reputación en la comunidad, que no se demostró que el ánimo de lucro fuera el motivo de su conducta, que es la primera vez que es sancionado por este Tribunal desde que juramentó como licenciado hace 36 años y su cooperación con el procedimiento disciplinario, estimamos procedente ordenar la suspensión inmediata del licenciado Toro González del ejercicio de la notaría por un término de seis meses. La Oficina del Alguacil de este Tribunal, procederá, de inmediato, a incautar su obra notarial y entregarla a la Oficina de Inspección de Notarías para la investigación e informe correspondiente.

Se dictará sentencia de conformidad.

---

licenciado Toro González presentó una moción solicitando la regrabación de una vista para defender su solicitud de reconsideración y, el 30 de julio de 2015, una moción solicitando una prórroga para cumplir con lo ordenado. Debido a que el 3 de agosto de 2015 el querellado presentó las declaraciones juradas, estimamos que dichas mociones son académicas y damos por cumplida la Resolución emitida el 24 de julio de 2015.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In Re:

Francisco Toro González                 CP-2013-10


SENTENCIA

En San Juan, Puerto Rico, a 2 de octubre de 2015.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, decretamos la suspensión inmediata del Lcdo. Francisco Toro González del ejercicio de la notaría por un término de seis (6) meses, por incumplir con los Cánones 18 y 35 del Código de Ética Profesional, 4 LPRA Ap. IX, y los Artículos 2, 14 y 16 de la Ley Notarial de Puerto Rico, Ley Núm. 2-1987, 4 LPRA sec. 2001 et seq.

El Alguacil de este Tribunal deberá incautar de inmediato la obra y el sello notarial del licenciado Toro González y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe a este Tribunal.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García no intervinieron.


María I. Colón Falcón
Secretaria del Tribunal Supremo, Interina