EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: <br><br> María N. Toro Imbernón | 2016 TSPR 8 <br><br> 194 DPR ____ |

Número del Caso: CP-2014-8

Fecha: 13 de enero de 2016

Abogados de la Querellada:

        Lcdo. Pedro Ortiz Álvarez
        Lcdo. Jesús Rodríguez Urbano


Oficina de la Procuradora General:

        Lcda. Margarita Mercado Echegaray
        Procuradora General


        Lcda. Yaizamarie Lugo Fontánez
        Procuradora General Auxiliar

Materia: La suspensión será efectiva el 20 de enero de 2016 fecha en que se le notificó a la abogada de su suspensión inmediata del ejercicio de la notaría.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

María N. Toro Imbernón          CP-2014-8          Conducta
                                                   Profesional

PER CURIAM

San Juan, Puerto Rico, a 13 de enero de 2016.

Una de las faltas más graves dentro del ejercicio de la notaría es violar las garantías de la fe pública notarial que el notario o notaria imprime a los documentos públicos que otorga. Tales actuaciones constituyen una violación a las disposiciones de la Ley Notarial de Puerto Rico, *infra*, al Reglamento Notarial, *infra*, y a los Cánones del Código de Ética Profesional, *infra*.

I

La Lcda. María N. Toro Imbernón (licenciada Toro Imbernón) fue admitida al ejercicio de la abogacía el 24 de enero de 1996 y al de la notaría el 22 de febrero de 1996. Contra ésta se presentó una queja el 17 de mayo de 2012 concerniente a

ciertas escrituras de segregación, liberación y compraventa de determinadas propiedades inmuebles relacionadas con un proyecto residencial desarrollado por Maredoljed Development Corporation (Maredoljed). Específicamente, Maredoljed otorgó un préstamo de construcción para un proyecto de vivienda con Eurobank. El referido préstamo fue garantizado con dos pagarés hipotecarios sobre las propiedades inmuebles donde se construiría el proyecto. Posteriormente, la cartera de préstamos de Eurobank fue adquirida por Oriental Bank and Trust (Oriental). Ante el incumplimiento de Maredoljed, Oriental instó una demanda en cobro de dinero y ejecución de prenda e hipoteca contra Maredoljed por incumplir con las obligaciones de pago contenidas en el préstamo otorgado.

Durante ese proceso judicial trascendió que la licenciada Toro Imbernón otorgó, como notaria, unas escrituras de segregación, liberación y compraventa de ciertas unidades del proyecto residencial, las cuales fueron presentadas ante el Registro de la Propiedad.[1] En consecuencia, se liberaron ciertas propiedades de las hipotecas que garantizaban el préstamo hipotecario objeto del proceso judicial. Sin embargo, al otorgar las referidas escrituras públicas faltó la firma del representante legal de Eurobank para liberar las referidas propiedades, por lo

---

[1]En específico las siguientes escrituras: (1) Escritura Núm. 131 de 8 de agosto de 2003; (2) Escritura Núm. 145 de 1 de octubre de 2003 ; (3) Escritura Núm. 149 de 14 de octubre de 2003; (4) Escritura Núm. 162 de 2 de diciembre de 2003, y (5) Escritura Núm. 1 de 17 de enero de 2007.

que las mismas resultaron nulas.[2] De igual forma, afloró que la licenciada Toro Imbernón expidió copias certificadas de estas escrituras aseverando que en éstas obraba la firma e iniciales de los comparecientes, aunque ello era falso.

La licenciada Toro Imbernón contestó la queja presentada. Al hacerlo informó que tenía una relación de amistad con los accionistas de Maredoljed y que para el 2003 confrontó una serie de contratiempos familiares relacionados con la condición de salud de sus padres. La letrada indicó que otorgó más de sesenta instrumentos públicos relacionados con el proyecto residencial en controversia y que, por la dinámica de extrema camaradería que medió entre las partes, accedió a otorgar las escrituras públicas sin la comparecencia del funcionario de Eurobank, bajo el entendido de que éste último procedería con la firma de los referidos documentos. De esta forma, la letrada reconoció su falta y aseveró estar sumamente arrepentida. A su vez, manifestó estar consciente de que no debió autorizar los referidos instrumentos públicos y aceptó que también expidió copia certificada haciendo constar que en cada uno de los documentos del original constaba la firma e iniciales de los otorgantes. Empero, señaló que al momento de imponérsele la sanción se considerara como atenuantes: (1) la aceptación de culpa en el proceso; (2) su profundo arrepentimiento; (3) la

---

[2]Como cuestión de hecho, las distintas demandas instadas por Oriental culminaron con sentencias a su favor declarando la nulidad de los documentos públicos otorgados por la Lcda. María N. Toro Imbernón.

ausencia de querellas o quejas anteriores; (4) el hecho de que su obra notarial no ha sido objeto de señalamientos anteriores; (5) la ausencia de fraude o mala fe en sus actuaciones; (6) que goza de una reputación intachable; (7) sus esfuerzos para solucionar la controversia; y (8) que es la primera vez que enfrenta un proceso disciplinario. En consecuencia, sugiere que la sanción disciplinaria se limite al ámbito del ejercicio de la notaría.

Luego de los trámites de rigor, se presentó la querella correspondiente, en la cual se le imputó a la licenciada Toro Imbernón seis cargos por cada uno de los instrumentos públicos otorgados. Los cargos imputados consisten en que la letrada violó: (1) el Art. 2 de la Ley Notarial al otorgar las escrituras y dar falsamente fe de la comparecencia del representante de Eurobank y de que éste le entregó el pagaré hipotecario para efectuar la correspondiente nota de liberación de propiedad; (2) el Art. 28 de la Ley Notarial al otorgar las escrituras sin obtener la firma ni iniciales del representante de Eurobank, quien debía comparecer el mismo día de su otorgamiento; (3) el Art. 39 de la Ley Notarial y la Regla 49 del Reglamento Notarial al expedir copia certificada en la que hizo constar falsamente que en el original constaba la firma e iniciales del representante de Eurobank, cuando ello era falso; (4) al Canon 18 de Ética Profesional por no desempeñarse de forma competente y diligente como notario; (5) el Canon 35 de Ética Profesional por indicar falsamente

que había comparecido, iniciado y firmado un representante de Eurobank y que éste le entregó el pagaré hipotecario para efectuar la correspondiente nota de liberación de la propiedad, así como certificar falsamente en una copia certificada de la escritura que en el original constaba la firma e iniciales de todos los comparecientes; y (6) el Canon 38 de Ética Profesional por faltar al deber de honradez y sinceridad.

Como la abogada aceptó los cargos, ésta solicitó una vista para que se consideraran los atenuantes que expuso al contestar la queja. Así las cosas, el 24 de septiembre de 2015, el Comisionado rindió su informe en el que recomendó sancionar severamente a la licenciada Toro Imbernón por violaciones a los Artículos 2, 28 y 39 de la Ley Notarial, la Regla 39 del Reglamento Notarial y las infracciones a los Cánones 18, 35 y 38 de los Cánones de Ética Profesional considerando los atenuantes invocados por la letrada.

II

Todo notario está obligado al cumplimiento estricto de la Ley Notarial de Puerto Rico, 4 LPRA sec. 2001 *et* seq., el Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV, y los cánones del Código de Ética Profesional, 4 LPRA Ap. IX. Estas normas velan que el notario ejerza su labor con esmero, diligencia y celo profesional. In re Toro González, res. 2 de octubre de 2015, 2015 TSPR 134, 193 DPR ___ (2015); In re Ayala Oquendo, 185 DPR 572, 580 (2012); In re Martínez Almodóvar, 180 DPR 805, 815 (2011).

En lo atinente a la conducta de la licenciada Toro Imbernón, resulta importante destacar que el Art. 2 de la Ley Notarial dispone como sigue:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio a lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. 4 LPRA sec. 2002.

Cuando un notario autoriza una escritura, asevera bajo la fe pública que la transacción es válida y legítima. In re Feliciano Ruiz, 117 DPR 269, 275 (1986). Ante ello, el Estado le confiere al documento autorizado por el notario una presunción de credibilidad y certeza de que lo afirmado es cierto, correcto y concuerda con la realidad. La fe pública notarial es la espina dorsal de todo el esquema de autenticidad notarial, por tanto el quebrantamiento de ésta conlleva la imposición de una severa medida disciplinaria. In re Toro González, supra; In re Martínez Sotomayor, 189 DPR 492, 500 (2013); In re Collazo Sánchez, 159 DPR 769, 774 (2003). En el momento en que el notario se aparta de cumplir con los deberes que le impone la ley y el ordenamiento ético incurre en una falta que debe ser condenada enérgicamente.

La Ley Notarial exige en su Art. 28, 4 LPRA sec. 2046, que al suscribir un instrumento público, el notario reciba personalmente las firmas de los comparecientes en cualquier tiempo, siempre que se haga dentro del mismo día natural del otorgamiento del referido instrumento. Como es sabido, la firma de los otorgantes constituye un requisito esencial al otorgar instrumentos públicos y le corresponde al notario tomarlas dentro del mismo día natural. La omisión de esa diligencia conlleva una falta a la fe pública notarial y puede ser causa de nulidad del instrumento público suscrito. In re Vargas Cintrón, 153 DPR 520, 524-525 (2001); In re Igartúa Muñoz, 153 DPR 315, 318-320 (2001). Cuando el notario contraviene lo que exige la ley, incurre en una práctica que al mismo tiempo constituye una violación del Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX., C. 18. Véanse: In re Muñoz Fernós, 184 DPR 679, 685 (2012); In re Aponte Berdecía, 161 DPR 94, 106 (2004)

De otra parte, la Ley Notarial en su Art. 39, 4 LPRA sec. 2061, rige el trámite que conlleva el expedir una copia certificada del documento otorgado por un notario. A su vez, la Regla 49 del Reglamento Notarial, 4 LPRA Ap. XXIV, R. 49, regula las formalidades que se deben cumplir para que una copia certificada constituya un título perfecto. Entre éstas, que se exprese que en el original aparecen las firmas e iniciales de los comparecientes. La copia certificada asevera la exactitud del instrumento

público al que se refiere. Cuando el notario expide una copia certificada de un instrumento público expresa que en el original protocolizado constan ciertos datos entre los que se encuentran las firmas e iniciales de los comparecientes. In re Torres Olmeda, 145 DPR 384, 390-391 (1998).

La falta a la verdad en el otorgamiento de la fe pública notarial conlleva una violación a la Ley Notarial y es contraria, a su vez, al Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX., C. 35, independiente de si hubo o no una intención o deliberación de mentir. In re Martínez Sotomayor, supra, pág. 500; In re Ojeda Martínez, 185 DPR 1068, 1075 (2012); In re Nieves Nieves, 181 DPR 25, 42 (2011). No puede ser de otra forma, pues el Canon 35, supra, claramente dispone como sigue:

> [N]o es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho.
> ....
> El abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar afidávit u otros documentos, y al presentar sus causas… Véase 4 LPRA Ap. IX, C. 35.

Ante ello, hemos expresado que cualquier hecho que un notario asevere en un documento público debe responder a la verdad y se infringe el Canon 35, supra, por el simple hecho de faltar a ésta, sin importar los motivos de la falsedad, puesto que no es necesario que se haya faltado a la verdad deliberadamente o con la intención de defraudar o

engañar. Tales manifestaciones no constituyen una defensa a la infracción ética. In re Ojeda Martínez, *supra*, pág. 1075; In re Nieves Nieves, *supra*.

De otra parte, consignar un hecho falso en un documento notarial constituye, a su vez, una violación al Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX., C. 38. In re Belén Trujillo, 184 DPR 793, 803 (2012). Este canon exige a los abogados que se esfuercen al máximo en su capacidad de exaltar el honor y la dignidad de la profesión, aunque al así hacerlo conlleve sacrificios personales. 4 LPRA Ap. IX, C. 38. La referida obligación se cimenta en que la imagen de la profesión legal se lacera, cuando el abogado o abogada no se conduce de forma digna y honorable. In re Pons Fontana, 182 DPR 300, 310 (2011) citando a Sigfrido Steidel Figueroa, Ética y responsabilidad disciplinaria del abogado, San Juan, Pubs. JTS, 2010, pág. 57.

De igual forma, expedir copias certificadas de instrumentos públicos que adolecen de las firmas requeridas o que los requisitos fueron suplidos con posterioridad al acto de otorgación y autorización viola los artículos de la Ley Notarial y los Cánones 35 y 38 del Código de Ética Profesional. In re Vargas Cintrón, *supra*, págs. 525-526.

Como corolario las normas éticas imponen al notario observar una conducta totalmente sincera y honrada y prohíbe cualquier medio incompatible con la verdad. El notario no puede olvidar que su deber es con la verdad y la

ley. *In re Martínez Sotomayor*, *supra*, pág. 501. Por ello, hemos expresado que una de las faltas más graves en que puede incurrir un notario es ser infiel a la veracidad de los hechos que describe en los documentos públicos. *In re Rosado Nieves*, 189 DPR 259, 260 (2013); *In re Belén Trujillo*, 184 DPR 793, 802 (2012).

## III

Al imponer una sanción disciplinaria este Tribunal considera diversos factores, ya sea como atenuantes o agravantes. Algunos de éstos consisten en el historial previo del abogado o abogada, su reputación, la conducta que realizó en ánimo de lucro, si aceptó los cargos imputados, su arrepentimiento y cualquier otra consideración que estimemos pertinente. *In re Toro González*, *supra*; *In re Peña, Santiago*, 185 DPR 764, 787 (2012); *In re Muñoz Fernós*, *supra*, pág. 688.

No albergamos duda de que la licenciada Toro Imbernón obró en contravención a los postulados mínimos éticos que rigen la profesión legal. Ciertamente, sus actuaciones demuestran una falta de honradez y celo profesional en su desempeño como notaria. Ésta venía obligada a cumplir estrictamente con el ejercicio de su función notarial, independiente de las relaciones y el ambiente que podría haberse propiciado entre las partes. Al así actuar, antepuso otras consideraciones a la función imparcial que debía ejercer en su función como notaria. La obligación de los notarios es con la ley.

Por otra parte, la licenciada Toro Imbernón no tan sólo faltó a la fe pública notarial, sino que además actuó con mendacidad al certificar un hecho que conocía no era cierto. Ésta expidió copias certificadas en las que aseveró que en los documentos que obraban en su protocolo constaban las iniciales y firmas de los comparecientes. Tales actuaciones denotan una falta a la veracidad de los hechos y constituyen un menoscabo en detrimento a la fe pública. Así, la licenciada Toro Imbernón no actuó con honor y dignidad en el desempeño de su profesión y otorgó documentos notariales en violación a la Ley Notarial y a su Reglamento. Ello, independiente del ánimo o intención de la conducta desplegada.

Por tanto, resulta irrefutable que la licenciada Toro Imbernón violó el Art. 2, 28 y 39 de la Ley Notarial, la Regla 49 del Reglamento Notarial y los Cánones 18, 35 y 38 del Código de Ética Profesional.

A pesar de ello, y al imponer la medida disciplinaria que procede, debemos reconocer que la licenciada Toro Imbernón muestra arrepentimiento de los actos acontecidos y reconoce su abandono de los postulados que rigen la profesión notarial. Igualmente, surge que la letrada no ha tenido otro procedimiento ni ha estado sujeta a otros señalamientos en cuanto a su función como notaria. Consideramos estos atenuantes a los efectos de limitar la medida disciplinaria a ser impuesta a la práctica de la notaría.

IV

Por las razones expuestas, ordenamos la suspensión inmediata e indefinida de la Lcda. María N. Toro Imbernón del ejercicio de la notaría. Se ordena al Alguacil de este Tribunal a que proceda a incautar la obra notarial de la Lcda. María N. Toro Imbernón, incluyendo su sello notarial y deberá entregarlos a la Oficina de Inspección de Notarías para el examen correspondiente e informe a este Tribunal.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

María N. Toro Imbernón          CP-2014-8          Conducta
                                                   Profesional

SENTENCIA

San Juan, Puerto Rico, a 13 de enero de 2016.

Por las razones expuestas en la Opinión *Per Curiam* que antecede, la cual se hace formar parte de la presente Sentencia, se suspende inmediata e indefinida de la Lcda. María N. Toro Imbernón del ejercicio de la notaría. Se ordena al Alguacil de este Tribunal a que proceda a incautar la obra notarial de la Lcda. María N. Toro Imbernón, incluyendo su sello notarial y deberá entregarlos a la Oficina de Inspección de Notarías para el examen correspondiente e informe a este Tribunal.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Feliberti Cintrón está conforme con el curso de acción tomado por el Tribunal de suspender a la Lcda. María N. Toro Imbernón del ejercicio de la notaría. No obstante, éste la hubiera suspendido también de la práctica de la profesión legal por un término no menor de tres (3) meses.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo