EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br><br>José E. Santiago Maldonado<br>(TS-18,288) | 2021 TSPR 68<br><br>207 DPR \_\_\_\_\_ |

Número del Caso: AB-2019-202


Fecha: 4 de mayo de 2021


Abogado del promovido:

    Por derecho propio


Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila de Jesús


Materia: La suspensión será efectiva el 17 de mayo de 2021, fecha en que se le notificó al abogado de su suspensión inmediata de la notaría.


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| *In re:* José E. Santiago Maldonado (TS-18,288) | AB-2019-202 |  |

**PER CURIAM**

En San Juan, Puerto Rico, a 4 de mayo de 2021.

Nuevamente nos vemos obligados a ejercer nuestra facultad disciplinaria sobre un miembro de la profesión jurídica por infringir los Arts. 2, 14, 15(f) y 77 de la Ley Notarial, *infra*, y los Arts. 3 y 9 de la Ley Núm. 195-2011, *infra*. Por ello, decretamos la suspensión inmediata del Lcdo. José E. Santiago Maldonado de la práctica de la notaría por un término de seis (6) meses. Además, se refiere el expediente de la *Queja* a la atención de la Oficina del Procurador General para la evaluación de los asuntos que no pudieron ser atendidos por la Oficina de Inspección de Notarías (ODIN) y la presunta violación a los Cánones 9, 12, 18, 19 y 24 del Código de Ética Profesional, *infra*.

I

El Lcdo. José E. Santiago Maldonado (licenciado Santiago Maldonado o promovido) fue admitido al ejercicio de la abogacía el 8 de febrero de 2011 y prestó juramento como notario el 27 de septiembre de 2011.

El 2 de octubre de 2019, se presentó una queja disciplinaria ante este Tribunal contra el licenciado Santiago Maldonado por presunta negligencia en el desempeño de sus funciones. En esta queja, la Sra. María E. Claudio García (la señora Claudio García o promovente) indicó que contrató al referido letrado el 11 de agosto de 2015, para que, entre otras cosas, autorizara unas escrituras públicas relacionadas al proceso de liquidación de la sociedad post ganancial compuesta por ella y el señor Calderón Morales, y a su vez, las presentara ante el Registro de la Propiedad (Registro).[1] Pasado dos años de esa transacción, durante el mes de noviembre de 2017, la señora Claudio García expresó que intentó comunicarse infructuosamente con el promovido en numerosas ocasiones para contratarlo nuevamente con el propósito de cancelar y presentar una escritura pública de otra propiedad.

Ante esa realidad, planteó que el 22 de abril de 2019 tuvo que contratar a la Lcda. Maribel Cordero Barreiro (licenciada Cordero Barreiro) para darle continuidad a unos procesos relacionados con una de sus propiedades y a su vez, la orientara sobre la *Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar*, *infra*.

---

[1] La promovente sostuvo que contrató los servicios del promovido para otorgar las siguientes escrituras públicas: (a) Escritura Núm. 12 del 28 de septiembre de 2015, sobre Cancelación de Hipoteca (para cancelar un gravamen hipotecario sobre el inmueble objeto del próximo instrumento público) (Escritura Núm. 12 de 2015); (b) Escritura Núm. 13 del 28 de septiembre de 2015, sobre Cesión de Participación de Bien Inmueble (Escritura Núm. 13 de 2015); (c) Escritura Núm. 14 del 28 de septiembre de 2015, sobre Cesión de Participación de Bien Inmueble (Escritura Núm. 14 de 2015); (d) Escritura Núm. 5 del 19 de marzo de 2016 sobre Cancelación de Hipoteca.

Como resultado de esa orientación, la promovente señaló que al llegar a su casa verificó las escrituras autorizadas por el promovido y se percató específicamente que en las Escrituras Núm. 13 y Núm. 14 de 2015, la propiedad objeto de cada transacción se constituía como su hogar seguro. Preocupada con esa situación, le solicitó a la licenciada Cordero Barreiro que investigara si esas escrituras fueron presentadas al Registro de la Propiedad. Sin embargo y para su sorpresa, descubrió que el licenciado Santiago Maldonado no había presentado ante el Registro estas escrituras públicas para su correspondiente inscripción, como presuntamente lo había acordado con el letrado.

En vista de lo anterior, sostuvo que la licenciada Cordero Barreiro también realizó numerosos intentos para comunicarse con el promovido ––incluyendo el envío de una comunicación escrita–– para aclarar estos asuntos pero que tampoco tuvo éxito en esa gestión.[2] En consecuencia, la promovente reiteró que los documentos no fueron presentados ante el Registro y que el promovido no atendió la situación relacionada con la designación simultánea de hogar seguro en dos propiedades distintas bajo su nombre.

_____

[2] La promovente proveyó copia de una carta de 2 de julio de 2019, enviada por correo electrónico al promovido, por la licenciada Cordero Barreiro, en la cual expresó, en lo pertinente: (1) que el promovido sostuvo una comunicación vía telefónica con la letrada; (2) que en dicha ocasión se le informó las diversas situaciones relacionadas con su incumplimiento; y (3) que el letrado había solicitado un tiempo adicional para atender la situación y presentar la evidencia acreditativa de sus gestiones. Sin embargo, no cumplió en presentar esa presunta evidencia.

Junto a la *Queja*, la señora Claudio García, proveyó copia de los pagos realizados al promovente que incluían, además del pago de honorarios al letrado, los gastos relacionados a la presentación de estos instrumentos públicos ante el Registro. Esto, como evidencia del compromiso del notario para llevar a cabo la presentación de los mismos.

Por su parte, el 25 de noviembre de 2019, el licenciado Santiago Maldonado compareció ante este Tribunal y presentó su *Contestación a la Queja*. En síntesis, expresó que realizó un estudio de título sobre las escrituras mencionadas y que según "su mejor recuerdo" no surge que se haya establecido una obligación de presentar dichos instrumentos públicos ante el Registro. Afirmó que entendía que no se pactó ninguna obligación de presentación de estos documentos al Registro y que pudo haber sido una confusión de la promovente. No obstante, esbozó que procedería a realizar las gestiones requeridas a la brevedad posible para presentar los documentos en el Registro a su costo, pues en el tiempo que llevaba como notario nunca había recibido queja alguna por su trabajo y que deseaba disipar cualquier duda o apariencia de incumplimiento. De igual manera, destacó que presentaría a este Tribunal evidencia de haber realizado este trámite. No obstante, el letrado aún no ha mostrado esta evidencia. Sobre el asunto relacionado a la doble designación de

hogar seguro, este no se expresó. Finalmente, solicitó el archivo de la *Queja*.

Así las cosas, el 27 de enero de 2020 esta Curia refirió la *Queja* de epígrafe a ODIN para su correspondiente investigación. Posteriormente, el 14 de julio de 2020 ODIN, a través de su Director, el Lcdo. Manuel E. Ávila de Jesús, presentó su *Informe* en el cual realizó varias determinaciones.[3] En lo pertinente, determinó que el promovido autorizó dos instrumentos públicos que ciertamente reclamaban la garantía de hogar seguro en los inmuebles objeto de las respectivas transacciones al amparo de la Ley Núm. 195-2011. Específicamente concluyó que el lenguaje utilizado en la "cláusula SEXTA de ambos instrumentos públicos **no es una mera advertencia** que aparenta una solicitud de designación

---

[3] Luego de una evaluación de los asuntos planteados en la *Queja* y de los documentos que obran en el expediente, el *Informe* de ODIN concluyó: (a) que el promovido no fue diligente al momento de recibir el reclamo presentado por la representación legal de la promovente y que, con su dilación, provocó la presentación del proceso disciplinario que nos ocupa; (b) que este autorizó dos instrumentos públicos que incumplen con las disposiciones de la Ley 195-2011 en torno a la solicitud de la anotación del derecho de hogar seguro en el Registro; (c) que el promovido, pese a ser orientado sobre el particular, hizo caso omiso para corregir esa situación, máxime luego de recibir la orientación de rigor por parte de ODIN en uno de los requerimientos cursados; (d) que el promovido autorizó dos instrumentos públicos cuyas advertencias medulares fueron omitidas, contrario a lo dispuesto en el Art. 15(f) de la Ley Notarial, *supra*; (e) que el promovido no fue diligente en cumplir con los requerimientos cursados por ODIN, al no presentar las copias certificadas solicitadas de los instrumentos públicos autorizados; y (f) que el promovido infringió el Art. 77 de la Ley Notarial, *supra*, al aceptar en uno de los escritos cursados haber facturado una cuantía menor por concepto del arancel notarial que debió haber percibido por la autorización de dos de los instrumentos objetos de la *Queja*. A su vez, el promovido no fue responsivo en su *Contestación a la Queja* presentada ante la Secretaría de este Tribunal, pues guardó absoluto silencio sobre el planteamiento hecho por la promovente sobre la solicitud de anotación del Derecho de Hogar Seguro sobre dos instrumentos públicos que versaban sobre dos bienes inmuebles distintos.

de hogar seguro: **es una afirmación para requerir al Registrador o Registradora de la Propiedad anotar tal derecho** en el tomo en el cual consta inscritos los respectivos bienes inmuebles". (Énfasis suplido).[4] A tenor con lo anterior, sostuvo que tanto la Escritura Núm. 13 de 2015 como la Escritura Núm. 14 de 2015 textualmente le indicaban a la promovente "su decisión de establecer y fijar su hogar seguro en la propiedad inmueble descrita en el párrafo PRIMERO de esta escritura y que **no ha designado como tal ninguna otra propiedad en o fuera de Puerto Rico**". (Énfasis suplido).[5] Por lo tanto, razonó que tales escrituras públicas no se ciñeron a lo dispuesto en los Arts. 3 y 9 de la *Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar*, *infra*.[6] Por ello, determinó que tal proceder es constitutivo de una violación al Art. 2 de la Ley Notarial, *infra*, toda vez que el promovido infringió su deber de velar por la legalidad de los instrumentos públicos otorgados ante él.

Por otro lado, el *Informe* de ODIN también concluyó, que el promovido infringió el Art. 77 de la Ley Notarial, *infra*, al haber facturado por concepto del arancel

---

[4] *Informe* de la Oficina de Inspección de Notarías, pág. 20.
[5] Íd., pág. 21.
[6] En este particular sostuvo que en la autorización de ambos instrumentos públicos el promovido omitió lenguaje expreso que debe ser esbozado en la cláusula que versa sobre la anotación del derecho de hogar seguro, según dispone la Ley 195-2011 a los efectos de advertir que "la propiedad designada como hogar seguro constituye la residencia principal de la requirente de ese derecho y que el propietario o propietaria no había designado como hogar seguro ninguna otra propiedad en o fuera de Puerto Rico, según requiere el Artículo 9 de Ley 195-2011".

notarial una cuantía menor a la que debió haber percibido por la autorización de dos de los instrumentos objeto de la *Queja*. Específicamente, determinó que el letrado autorizó la Escritura Núm. 12 de 2015 y facturó $50.00 menos de lo que debió haber percibido por sus servicios. A su vez, sostuvo que tal actuación se repitió en la autorización de la Escritura Núm. 13 de 2015, al percibir $113.00 menos de lo que debió haber facturado. Finalmente, concluyó que las actuaciones del promovido —tanto su inacción y su falta de diligencia en la situación fáctica del caso, así como la desplegada en el trámite investigativo de esta queja— infringieron los Cánones 9, 12, 18, 19 y 24 del Código de Ética Profesional, *infra*.[7]

Cabe resaltar que, en cuanto a la *Queja* de la promovente sobre el incumplimiento del promovido en presentar las escrituras ante el Registro de la Propiedad, ODIN recomendó referir este asunto a la Oficina del

---

[7] En consecuencia, nos recomendó: (a) Orden[ar] la suspensión temporera por el término de sesenta (60) días del ejercicio de la notaría del aquí promovido; en la alternativa, se le censure enérgicamente por haber infringido los postulados establecidos en los Cánones 9, 12, 18 y 19 del Código de Ética Profesional, así como los Arts. 2, 14, 15(f) y 77 de la Ley Notarial; (b) Se aperciba al promovido que en el futuro deberá suscribir un contrato de servicios profesionales con los requirentes de un instrumento público que autorice antes del otorgamiento, en cumplimiento con el Canon 24 del Código de Ética Profesional, *infra*;(c) Ordene al promovido, a sus expensas, sufragar el proceso de autorización ante un tercer notario o notaria de la Escritura de Rectificación y Ratificación correspondiente, para atender el asunto medular en torno al inmueble que interesa la promovente se anote su derecho de hogar seguro en el Registro Inmobiliario Digital; (d) Se refiera la presente Queja a la atención de la Oficina del Procurador General, para la evaluación de los asuntos que no pudieron ser atendidos por ODIN, en aras de rendir el correspondiente Informe con sus recomendaciones; y (e) Emita, además, cualquier otro pronunciamiento que en Derecho proceda.

Procurador General para su investigación e Informe correspondiente.[8]

Realizado el *Informe* de ODIN, el 20 de agosto de 2020 emitimos una *Resolución* en la cual se le concedió al promovido veinte (20) días para que se expresara sobre el mismo. El 16 de septiembre de 2020, el promovido presentó su respuesta al referido *Informe*. En síntesis, el letrado expresó que, a su mejor recuerdo, de las escrituras autorizadas no surge que se haya establecido una obligación de presentar los referidos instrumentos públicos al Registro de la Propiedad. Además, resaltó que, por conocer a la promovente no se suscribió un contrato de servicios profesionales, sino que se hizo de manera oral. En cuanto a la designación de hogar seguro sobre las Escritura Núm. 13 y Núm. 14 de 2015, sostuvo que "simplemente había ocurrido un error" en la advertencia que establece el derecho que tenía la otorgante de designar cualquiera de estas propiedades como hogar seguro, pero que este error no establecía una solicitud al Registrador de la Propiedad para que designara ninguna de las propiedades como hogar seguro. Por último, nos solicitó que no lo suspendiéramos de la profesión y que de entender que este erró, se le dicipline con una censura.

---

[8] Específicamente, sobre este asunto recomendó al Procurador General investigar sobre las controversias siguientes: (1) determinar quién tenía la responsabilidad de presentar ante el Registro los instrumentos públicos autorizados; (2) determinar qué partidas fueron facturadas por el promovido y qué partidas no se encontraban contempladas en los servicios profesionales rendidos; y (3) qué cuantía, si alguna, tiene o no que restituirle a la promovente.

Por último, es importante señalar, que el 13 de octubre de 2020, la señora Claudio García solicitó a este Tribunal copia de la réplica del promovido al *Informe* de ODIN, debido a que este no se la notificó contrario a lo dispuesto en la Regla 39 de este Tribunal.

Examinado este cuadro fáctico, pasamos a exponer el derecho aplicable.

## II

Reiteradamente hemos expresado que este Tribunal tiene el poder inherente para regular la profesión de la abogacía, pues nos compete asegurarnos de que aquellos admitidos a la profesión legal, así como la notaría, ejerzan sus funciones de **manera responsable**, **competente** y **diligente**.[9] Particularmente, en el campo notarial hemos sido enfáticos en que los notarios deben ejercer su función con extremo cuidado, esmero y celo profesional, ya que vienen obligados a cumplir estrictamente con la *Ley Notarial de Puerto Rico* (Ley Notarial)[10], su Reglamento, con los *Cánones del Código de Ética Profesional* y con las leyes que aplican a los documentos que autorizan.[11] El

---

[9] *In re Julio C. Villalona Viera*, 2021 TSPR 27, 206 DPR __ (2020); *In re Oyola Torres*, 194 DPR 437, 440 (2016); *In re Vera Vélez*, 192 DPR 216, 226 (2015).

[10] Ley Núm. 75 del 2 de julio de 1987, 4 LPRA sec. 2002.

[11] *In re Sánchez Reyes*, 204 DPR 548, 565 (2020); *In re García Cabrera*, 201 DPR 902, 918 (2019); *In re Márquez Colón*, 198 DPR 509, 518 (2017); *In re Maldonado Maldonado*, 197 DPR 802, 809 (2017); *In re Palmer Ramos*, 195 DPR 245, 254-255 (2016); *In re Toro González II*, 193 DPR 877, 889 (2015); *In re Vargas Velázquez*, 193 DPR 681, 693 (2015); *In re Ayala Oquendo*, 185 DPR 572, 580 (2012).

incumplimiento con tales preceptos normativos los exponen a sanciones disciplinarias.[12] Veamos.

### A. Ley Notarial de Puerto Rico

En múltiples ocasiones hemos expresado que la función notarial requiere el mayor celo en el cumplimiento de las obligaciones que imponen la Ley Notarial y su Reglamento, así como los deberes éticos.[13] Por ello, los notarios tienen la obligación de adherirse estrictamente al cumplimiento de todos aquellos deberes y las obligaciones que les impone su función notarial. En el desempeño de estos deberes, están llamados a ser en extremo cuidadosos y desempeñarse con esmero, diligencia y estricto celo profesional.[14]

Cónsono con lo anterior, el Art. 2 de la Ley Notarial, *supra*, consagra el principio de la fe pública notarial y dispone lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado **para dar fe y autenticidad conforme a las leyes de los negocios jurídicos** y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, **dándole forma legal**, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función

---

[12] *In re Ayala Oquendo*, supra; *In re Montalvo Guzmán*, 164 DPR 806, 810 (2005).

[13] *In re Lewis Maymó*, 2020 TSPR 118, 205 DPR ___ (2020); *In re Abendaño Ezquerro*, 198 DPR 677 (2017).
[14] *In re Bryan Picó*, 192 DPR 246, 252 (2015); *In re Martínez Sotomayor*, 189 DPR 492, 499 (2013).

personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Énfasis suplido).[15]

Hemos esbozado que la función que ejerce el notario va más allá de fungir como un autómata que legaliza las firmas, **ya que posee el deber de verificar que el instrumento público <u>cumpla con todas las formalidades de la ley</u>, que es legal y verdadero, y finalmente, que es una transacción legítima y válida.**[16]

Además, sabido es que la fe pública del notario es plena en relación a los hechos que en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento.[17] Como resultado, un instrumento público avalado por la dación de fe de un notario se presume que cumple con todas las formalidades de ley y "brinda la confianza de que los hechos jurídicos y las circunstancias que acredita el notario fueron percibidos y comprobados con sus sentidos o ejecutados por él".[18]

Por otro lado, el Art. 14 de la Ley Notarial, *supra*, establece que "[l]os notarios redactarán las escrituras

---

[15] 4 LPRA sec. 2002 et seq.

[16] *In re Peña Osorio*, 169 DPR 738, 788-789 (2019); *In re García Cabrera*, supra, pág. 919 (citando a *In re Torres Alicea*, 175 DPR 456, 460 (2009)); *In re Maldonado Maldonado*, supra.

[17] 4 LPRA sec. 2002 et seq.

[18] *In re Arocho Cruz*, 200 DPR 352, 365-366 (2018); *In re Toro Imbernón*, 194 DPR 499, 305 (2016); *In re González Hernández*, 190 DPR 164, 176-177 (2014); *In re Rivera Aponte*, 169 DPR 738, 741-742 (2007).

públicas de acuerdo con la voluntad de los otorgantes y adaptándola a las formalidades jurídicas necesarias para su eficacia".[19] Por su parte, el Art. 15 de esta ley instaura los requisitos generales del contenido de las escrituras públicas. Estos se refieren a requerimientos formales que deberán observarse en el otorgamiento y autorización de escrituras ya que, de otro modo, su incumplimiento podría acarrear la nulidad o anulabilidad de éstas.[20] En lo pertinente, este artículo dispone lo siguiente:

> La escritura pública, en adición al negocio jurídico que motiva su otorgamiento y sus antecedentes y a los hechos presenciados y consignados por el notario en la parte expositiva y dispositiva contendrá lo siguiente:
>
> . . . . . . .
>
> (f) El haberles hecho de palabra a los otorgantes en el acto del otorgamiento las reservas y advertencias legales pertinentes. No obstante, **se consignarán en el documento aquellas advertencias que por su importancia deban, a juicio prudente del notario, detallarse expresamente**. (Énfasis nuestro.).[21]

Por lo tanto, el notario tiene el deber de consignar las advertencias pertinentes al negocio jurídico en las escrituras públicas para brindar "a los otorgantes las informaciones, aclaraciones y advertencias necesarias para que comprendan el sentido, así como los efectos y

---

[19] 4 LPRA sec. 2032.
[20] 4 LPRA secs. 2032-2033.
[21] 4 LPRA sec. 2033.

consecuencias del negocio, y se den cuenta de los riesgos que corren en celebrarlo".[22] En ese sentido, para determinar cuáles aclaraciones y advertencias se deben consignar, es indispensable un análisis integral del derecho que aplica al acto o negocio en el que interviene.[23] Ello, como parte de los deberes que ejerce al momento de autorizar una escritura.[24] De esta forma, los notarios pueden salvaguardar su responsabilidad, pues el incumplimiento con efectuar una advertencia importante y necesaria ——según los parámetros mencionados—— además de infringir el Art. 15(f), *supra*, constituye una violación al imperativo de custodiar la fe pública notarial.[25]

De otra parte, lo correspondiente a la tarifa arancelaria que un notario puede facturar en concepto de honorarios notariales como compensación por el trabajo realizado en el otorgamiento de un instrumento público, está regulado en el Art. 77(2)(b) de la Ley Notarial, *supra*. En lo pertinente, este artículo establece que

> [p]or la autorización de instrumentos de objetos valuables o en que medie cosa o cantidad de valor determinable cuyo valor exceda de diez mil dólares ($10,000), pero que no exceda de cinco

---

[22]*In re Maldonado Maldonado*, supra, pág. 811; *In re Palmer Ramos*, supra, pág. 256; *In re Toro González*, supra, págs. 888-889.

[23] *In re Toro González II*, 193 DPR 877 (2015). Véase también S. Torres Peralta, El Derecho Notarial Puertorriqueño, STP, 195, 0.31.

[24] *In re Davidson Lampón*, 159 DPR 448, 461 (2003) (citando a Chévere v. Cátala, 115 DPR 432, 438 (1984)).

[25] *In re García Cabrera*, 201 DPR 902 (2019); In re Ayala Oquendo, 185 DPR 572, 581 (2012). (Ello, con independencia de que esa haya sido o no la intención del notario. Como obligación impuesta por ley, la inobservancia con este requisito es, a su vez, una violación al Art. 2 de la Ley Notarial, el cual exige a todo notario el cumplimiento con sus preceptos).

millones de dólares ($5,000,000) los honorarios notariales fijados por este arancel serán establecidos por acuerdo entre las partes y el notario, pero nunca será mayor del uno por ciento (1%) ni menor del punto cincuenta por ciento (.50%) de su valor, lo cual nunca será menor de doscientos cincuenta dólares ($250).[26]

En cuanto a los documentos con cuantía, particularmente aquellos sobre las cancelaciones de hipoteca, el Art. 77 inciso 2(d) dispone que

[l]os honorarios notariales serán establecidos por acuerdo entre las partes y el (la) notario(a), los cuales nunca serán menores del punto **cincuenta por ciento (.50%) de la cuantía establecida como el principal de pagaré garantizado por la hipoteca a cancelarse**, cuyo valor no exceda de cinco millones de dólares ($5,000,000). [...]

En ningún caso de los incluidos en este inciso la cuantía a pagar por honorarios notariales será menor de doscientos cincuenta dólares ($250).[27]

Por su parte, el inciso 4(a) establece que "[n]ingún notario(a) podrá cobrar o recibir por sus servicios notariales otra compensación que no sea la establecida en este capítulo, ya sea mediante reembolso de los honorarios, concesión de descuentos o privilegios, o cualquier otro método utilizado para reducir los honorarios aquí establecidos".[28] De manera similar, el inciso 4(c) del referido artículo dispone que

---

[26] 4 LPRA sec. 2131(2)(b).
[27] 4 LPRA sec. 2131(2)(d).
[28] 4 LPRA sec. 2131(4)(a).

> [c]ualquier notario que **incumpla las normas establecidas por el arancel fijado en este capítulo** o comparta los honorarios notariales aquí fijados con personas naturales o jurídicas que no estén en cumplimiento con lo establecido en este capítulo, **será sancionado por el Tribunal Supremo de Puerto Rico mediante reprimenda, multa, suspensión temporal o permanente.** (Énfasis suplido).[29]

## B. Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar

El pueblo puertorriqueño tiene un alto interés social de proteger la familia y fomentar la adquisición de una vivienda adecuada y segura entre sus ciudadanos.[30] Con ese fin, la Asamblea Legislativa aprobó la Ley Núm. 195-2011 mejor conocida como *Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar.*[31] Esta garantía de hogar seguro tiene como propósito que todo ciudadano pueda contar con una "protección básica ante el riesgo de ejecución de una sentencia en contra de su residencia".[32]

Específicamente, el Art. 3 de la Ley Núm. 195-2011, establece que

> [t]odo individuo o jefe de familia, domiciliado en Puerto Rico, tendrá derecho a poseer y disfrutar, en concepto de hogar seguro, **una finca** consistente en un predio de terreno y la estructura enclavada en el mismo, o **una residencia** bajo el régimen de la Ley de Condominios que le pertenezca o posea legalmente, y estuviere ocupado por éste o por

---

[29] 4 LPRA sec. 2131(4)(a).
[30] Exposición de Motivos de la Ley Núm. 195-2011 (2011 Leyes de Puerto Rico 2230).
[31] *Ley del Derecho a la Protección del Hogar Principal y el Hogar Familiar,* Ley Núm. 195-2011, 31 LPRA sec. 1858 *et seq.*
[32] *Money's People Inc. v. López Julia,* 202 DPR 889, 902 (2019).

su familia **exclusivamente como residencia principal**. (Énfasis Suplido).[33]

En concordancia con lo anterior, el Art. 9 de la Ley Núm. 195-2011, *supra*, dispone que el notario deberá advertir al adquirente en la escritura de adquisición del inmueble sobre el derecho a tomar dicha determinación en ese instrumento.[34] También se establecen dos (2) formas en que los propietarios pueden reclamar su derecho a hogar seguro para con una de sus propiedades.[35] Mediante la primera opción, los individuos pueden reclamar su derecho a hogar seguro en el mismo momento en que adquieran una propiedad. Para así hacerlo, basta con que el individuo lo haga constar en la escritura de adquisición.[36]

La segunda manera de reclamar el derecho a hogar seguro se refiere a aquellas instancias en que la finca ya está inscrita a nombre del titular en el Registro de la Propiedad. En ese caso, específicamente el estatuto dispone lo siguiente:

> En los casos donde la finca estuviere ya inscrita a nombre de dicho individuo o jefe de familia, bastará que el propietario **otorgue un acta ante notario público, donde se haga constar que la finca tiene carácter de hogar seguro,** para que el Registrador de la Propiedad consigne tal carácter en nota marginal de la inscripción correspondiente.[37]

---

[33] 31 LPRA sec. 1858.
[34] 31 LPRA sec. 1858f.
[35] *Rivera García v. Registradora*, 189 DPR 628 (2013).
[36] 31 LPRA sec. 1858f.
[37] Íd.

En ambos casos el notario deberá expresar en la escritura o acta que la propiedad sobre la que se reclama la protección de Hogar Seguro **constituye la residencia principal del requirente y que no ha designado otra propiedad como su hogar seguro**. De manera similar, esta ley añade que el notario **deberá advertir** al adquirente sobre las posibles sanciones a las que se expone toda persona que intente o logre inscribir más de una propiedad como hogar seguro en el Registro.[38]

### III

Una vez examinada la queja de autos y analizada la normativa disciplinaria pertinente, entendemos que conforme refleja el *Informe* presentado por el Director de ODIN, el licenciado Santiago Maldonado infringió los Arts. 2, 14, 15(f) y 77 de la Ley Notarial, *supra*, así como los Arts. 3 y 9 de la Ley Núm. 195-2011, *supra*. Veamos.

De acuerdo con el aludido *Informe*, al licenciado Santiago Maldonado se le responsabiliza, en síntesis, por desempeñarse en forma contraria a los principios éticos que rigen la práctica de la notaría y la abogacía. A

---

[38] Íd. De conformidad con dicho deber, el Art. 10 de la Ley Núm. 195, *supra*, dispone que:

Incurrirá en delito grave con pena de reclusión por un término fijo de tres (3) años, toda persona que intente o logre inscribir en el Registro de la Propiedad la protección de hogar seguro en más de una finca de su propiedad o intente o logre inscribir a favor de otra persona la protección de hogar seguro, a la que ésta no tuviere derecho. Además, en los casos donde la persona se encuentre culpable de tal delito, ésta no tendrá derecho a hogar seguro sobre ninguna de las propiedades objeto de su actuación ilegal.

saber: (1) solicitar la anotación del derecho a hogar seguro sobre dos inmuebles simultáneamente pertenecientes a la promovente en los instrumentos públicos que autorizó; (2) autorizar dos instrumentos públicos cuyas advertencias medulares fueron omitidas; y (3) haber facturado una cuantía menor por concepto del arancel notarial que debió haber percibido por la autorización de dos instrumentos objetos de la *Queja* (facturó una cuantía menor del 0.50% del valor de la transacción). Considerando esa conducta negligente del letrado y la prueba que obra en el expediente de la queja, **coincidimos con las determinaciones realizadas en el Informe presentado por el Director de ODIN.** En primer lugar, de una lectura expresa de la Escritura Núm. 13 como en la Escritura Núm. 14 de 2015 se desprende que el promovido utilizó un lenguaje idéntico en el cuerpo de ambos instrumentos públicos autorizados que claramente reclamaba la garantía de hogar seguro en las propiedades inmuebles de la promovente,[39] contrario a lo dispuesto por el Art. 3 de la Ley Núm. 195-2011. Pues este artículo diáfanamente dispone que toda persona tendrá derecho a reclamar en concepto de hogar seguro, **una (1) finca** o **una (1) residencia exclusivamente** como su residencia principal. Es decir, esta disposición concede el derecho a reclamar el derecho a hogar seguro exclusivamente sobre una (1) propiedad como residencia principal de la persona interesada. En ese

---

[39] *Informe* de la Oficina de Inspección de Notarías, págs. 11-12.

sentido, concordamos con el Director de ODIN en que la cláusula que incluyó el notario en ambas escrituras es una afirmación en la cual le solicitaba al Registrador para que tomara razón de ello en el cuerpo de la inscripción de este derecho en propiedades distintas de la promovente.[40]

Por consiguiente, ese proceder no es cónsono con los deberes de todo notario al autorizar este tipo de instrumento público, incluyendo el deber de asesorar diligentemente sobre el derecho aplicable y también sobre su obligación de autorizar instrumentos públicos que sean inscribibles en el Registro. De igual forma, ese proceder infringió el Art. 2 de la Ley Notarial, *supra*, toda vez que **el Promovido incumplió su deber de velar por la <u>legalidad</u> de los instrumentos públicos ante él autorizados**. Las referidas acciones del notario resultaron en violaciones a los Arts. 2, 14 y 15 de la Ley Notarial, *supra*, al contravenir el principio de fe pública notarial y no redactar los instrumentos públicos conforme a las formalidades jurídicas necesarias para su eficacia.

En segundo lugar, el promovente omitió las advertencias requeridas según dispone el Art. 9 de la Ley Núm. 195-2011, sobre la anotación del derecho de hogar seguro.[41] Por lo tanto, no nos convence la pretensión del

---

[40] Íd., pág. 21.
[41] Específicamente, el promovente omitió las advertencias siguientes: que la propiedad designada como hogar seguro constituye la residencia principal de la requirente de ese derecho y que el propietario o propietaria no había designado como hogar seguro

promovido de que "simplemente había ocurrido un error" en la advertencia que establece esta garantía pues claramente el Art. 9 de la Ley Núm. 195-2011, obliga al notario autorizante a advertir al adquirente sobre su derecho a fijar su hogar seguro y hacer constar su deber de así hacerlo. De esta manera, el letrado también infringió el Art. 14 —sobre la responsabilidad del notario para redactar las escrituras públicas de acuerdo con las formalidades jurídicas necesarias para su eficacia— y el Art. 15 de la Ley Notarial, *supra*, —sobre los requisitos generales del contenido de las escrituras públicas, particularmente, aquellas advertencias pertinentes al negocio jurídico.

En tercer lugar, lo relacionado a las cuantías cobradas por concepto de arancel notarial por la autorización de varios instrumentos públicos por el promovido infringieron lo establecido en el Art. 77 de la Ley Notarial, *supra*,[42] pues facturó los servicios rendidos a una tarifa menor de las establecidas. Específicamente, y como antes mencionado, en la autorización de la Escritura Núm. 12 de 2015 el Promovido facturó $50.00 menos de lo que debió haber percibido por sus servicios. Asimismo, esta actuación se repitió en la autorización de la Escritura Núm. 13 de 2015, al percibir $113.00 menos de lo

---

ninguna otra propiedad en o fuera de Puerto Rico, según requiere el Art. 9 de la Ley Núm. 195-2011.
    [42] Específicamente las Secciones 2(b), 4(a) y 4(c) de la Ley Notarial, 4 LPRA secs. 2131 2(b), 4(a) y 4(c), respectivamente.

que debió haber facturado. Por lo tanto, esta actuación del promovido fue contraria a lo establecido en el Art. 77 inciso 4(a) sobre la prohibición a los notarios para cobrar o recibir por sus servicios notariales otra compensación que no sea la establecida en este capítulo. En ese sentido, el promovido incumplió con las normas establecidas por el arancel fijado en este capítulo y se expuso a ser sancionado conforme lo establecido en el inciso 4(c) de este artículo de la Ley Notarial, *supra*.

Finalmente, podemos concluir que, considerando los antecedentes fácticos reseñados, así como las actuaciones del licenciado Santiago Maldonado no hay duda de que su comportamiento infringió los Arts. 2, 14, 15(f) y 77 de la Ley Notarial, así como los Arts. 3 y 9 de la Ley Núm. 195-2011, *supra*. Además, entendemos prudente que la Oficina del Procurador General investigue los asuntos que no pudieron ser atendidos por ODIN,[43] y las posibles violaciones a los Cánones de Ética Profesional, *supra*.

### IV.

Ahora bien, nos corresponde determinar la sanción disciplinaria a imponerle al licenciado Santiago Maldonado por el comportamiento exhibido. Según hemos expuesto en

---

[43] Específicamente, ODIN recomendó investigar sobre las controversias siguientes: (1) determinar quién tenía la responsabilidad de presentar ante el Registro los instrumentos públicos autorizados; (2) determinar qué partidas fueron facturadas por el Promovido y qué partidas no se encontraban contempladas en los servicios profesionales rendidos; y (3) qué cuantía, si alguna, tiene o no que restituirle a la promovente.

ocasiones anteriores, al fijar la misma, procede que consideremos los siguientes factores: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fuera imputada; y (9) otros atenuantes o agravantes que surjan de los hechos.[44]

En la evaluación de la sanción sobre la conducta del letrado, consideramos como atenuantes que: (1) el licenciado Santiago Maldonado se enfrenta a su primera falta en los diez (10) años que lleva ejerciendo la profesión; (2) no presentó una defensa frívola de su conducta; (3)mencionó en su *Contestación a Queja* estar dispuesto a realizar las gestiones para la presentación de los referidos instrumentos públicos al Registro de la Propiedad a su costo; y (4) que según expone en su réplica al *Informe* de ODIN no hubo intención alguna de faltarle de manera alguna a la Querellante y no actuó de mala fe. Consecuentemente, considerada la totalidad de las circunstancias, procede que impongamos como sanción la

---

[44] *In re Sánchez Reyes*, supra; *In re Soto Aguilú*, supra, págs. 147-148; *In re López Santiago*, 199 DPR 797, 818 (2018); *In re Maldonado Maldonado*, supra, pág. 818. *In re Rivera Grau*, 196 DPR 522, 539 (2016); *In re Toro Imbernón*, 194 DPR 499, 508 (2016).

suspensión inmediata del ejercicio de la notaría por seis (6) meses.

**V.**

Evaluado y ponderado el Derecho aplicable, así como las infracciones éticas incurridas por el licenciado Santiago Maldonado, decretamos su suspensión inmediata del ejercicio de la notaría por el término de seis (6) meses. Le ordenamos notificar a todas las personas que habían procurado de su práctica notarial su inhabilidad para atender los trabajos notariales que tenía pendiente con ellas y devolverles tanto sus expedientes como los honorarios notariales recibidos por trabajos no rendidos. Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta *Opinión Per Curiam* y *Sentencia*. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la profesión de la notaría al solicitarlo en el futuro.

Por otro lado, se apercibe al promovido que en el futuro deberá suscribir un contrato de servicios profesionales con los requirentes de un instrumento público que autorice antes del otorgamiento, en cumplimiento con el Canon 24 del Código de Ética Profesional, *supra*. Asimismo, se le ordena al promovido, a sus expensas, sufragar el proceso de autorización ante un tercer notario o notaria de la Escritura de Rectificación

y Ratificación correspondiente, para atender el asunto medular en torno al inmueble que interesa la promovente se anote su derecho de hogar seguro en el Registro de la Propiedad. Consecuentemente, se refiere la presente *Queja* a la atención de la Oficina del Procurador General, para la evaluación de los asuntos que no pudieron ser atendidos por ODIN, en aras de rendir el correspondiente Informe con sus recomendaciones.

De otra parte, se le ordena al Alguacil de este Foro incautar inmediatamente la totalidad de la obra y el sello notarial del licenciado Santiago Maldonado y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. Además, en virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. Asimismo, la fianza se considerará buena y válida por tres años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese personalmente esta *Opinión Per Curiam* y *Sentencia* al licenciado Santiago Maldonado a través de la Oficina del Alguacil de este Tribunal.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re:*

José E. Santiago Maldonado        AB-2019-0202
(TS-18,288)

SENTENCIA

En San Juan, Puerto Rico, a 4 de mayo de 2021.

Evaluado y ponderado el Derecho aplicable, así como las infracciones éticas incurridas por el Lcdo. José E. Santiago Maldonado, decretamos su **suspensión inmediata del ejercicio de la notaría por el término de seis (6) meses.** Le ordenamos notificar a todas las personas que habían procurado de su práctica notarial su inhabilidad para atender los trabajos notariales que tenía pendiente con ellas y devolverles tanto sus expedientes como los honorarios notariales recibidos por trabajos no rendidos. Además, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, a partir de la notificación de esta *Opinión Per Curiam* y *Sentencia*. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la profesión de la notaría al solicitarlo en el futuro.

Por otro lado, se apercibe al promovido que en el futuro deberá suscribir un contrato de servicios profesionales con los requirentes de un instrumento público que autorice antes del otorgamiento, en cumplimiento con el Canon 24 del Código de Ética Profesional, 4 LPRA Ap. IX. Asimismo, se le ordena al promovido, a sus expensas, sufragar el proceso de autorización ante un tercer notario o notaria de la Escritura de Rectificación y Ratificación correspondiente, para atender el asunto medular en torno al inmueble que interesa la promovente se anote su derecho de hogar seguro en el Registro de la Propiedad. Consecuentemente, se refiere la presente *Queja* a la atención de la Oficina del Procurador General, para la evaluación de los asuntos que no pudieron ser atendidos por ODIN, en aras de rendir el correspondiente Informe con sus recomendaciones.

De otra parte, se le ordena al Alguacil de este Foro incautar inmediatamente la totalidad de la obra y el sello notarial del licenciado Santiago Maldonado y entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e informe. Además, en virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales, de haber prestado la misma, queda automáticamente cancelada. Asimismo, la fianza se considerará buena y válida por tres años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese personalmente esta *Opinión Per Curiam* y *Sentencia* al licenciado Santiago Maldonado a través de la Oficina del Alguacil de este Tribunal.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


José Ignacio Campos Pérez
Secretario del Tribunal Supremo