Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| PAUL SANTIAGO FERREIRA<br><br>EX PARTE<br><br>Peticionario | TA2025CE00300 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Caguas<br><br>Civil Núm. CG2022CV02453<br><br>Sobre: Declaratoria de Herederos |
|---|---|---|

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Juez Barresi Ramos y la Jueza Santiago Calderón.

Rodríguez Casillas, juez ponente.

### SENTENCIA

En San Juan, Puerto Rico, a 27 de octubre de 2025.

Comparece la Sra. Carmen Louisa Santiago, también conocida por Carmen Luisa Santiago y Carmen Luisa Santiago Centeno (en adelante, "señora Santiago Centeno" o "peticionaria"), para solicitar que revoquemos la *Orden* emitida y notificada el **17 de julio de 2025** por el Tribunal de Primera Instancia, Sala Superior de Caguas (en adelante, "tribunal de instancia" o "TPI").[1] Allí se declaró *No Ha Lugar* a la moción de reconsideración presentada por la señora Santiago Centeno en la cual solicitó se reconsiderara la *Orden* emitida y notificada el **25 de junio de 2025** que denegó enmendar la declaratoria de herederos para declararle heredera.

A continuación, **expedimos** el auto de *certiorari* y **revocamos** la determinación recurrida.

-I-

El caso de autos tiene su génesis el **26 de julio de 2022**, ocasión en que el señor Paul Santiago, también conocido por Paul

---

[1] Véase, Entrada Núm. 9 del Sistema Unificado de Manejo y Administración de Casos (en adelante, "SUMAC").

Santiago Ferreira (en adelante, "señor Santiago Ferreira") radicó una *Petición* sobre declaratoria de herederos.[2] En esta solicitó que se le declarara único y universal heredero de su padre, el señor Juan Santiago Centeno (en adelante, "causante").[3]

Así pues, el **2 de agosto de 2022**,[4] el tribunal de instancia emitió una *Resolución* en la que declaró *Con Lugar* la Petición de Declaratoria de Herederos y declaró al señor Santiago Ferreira como único y universal heredero del causante.[5]

Tiempo después, el **16 de junio de 2025**, la señora Santiago Centeno radicó una *Moción en solicitud de Resolución enmendada por razón de repudiación de herencia.*[6] Allí argumentó que, el **18 de abril de 2024**, mediante Escritura número 25, ante el Notario José F. Aponte Aragoneses, el señor Santiago Ferreira repudió la herencia del causante. Por lo cual, arguyó que, dado que el causante no tenía otros herederos preferentes, procedía que se le declarara a sí —su hermana— como única y universal heredera.[7]

Posteriormente, el **24 de junio de 2025**, el tribunal de instancia emitió una *Orden* en la que expresó: "*NÓTESE, QUE LA COPIA SIMPLE DE LA ESCRITURA DE REPUDIACIÓN NO ESTÁ SELLADA Y RUBRICADA EN TODAS LAS PÁGINAS.*"[8]

Ese mismo día, la señora Santiago Centeno replicó mediante una *Moción informativa y aclarando particulares*.[9] Aclaró lo siguiente:

> *En relación al señalamiento de que la misma no está sellada y rubricada en todas las páginas se debe al hecho de que esta se redactó al anverso y reverso de los folios, a cuyo efecto*

---

[2] Véase, Entrada Núm. 1 de SUMAC.
[3] Acompañó junto a su solicitud los siguientes documentos: Certificado de Defunción; Declaración Jurada; Certificado de Nacimiento y; Negativa de Testamento.
[4] Notificada al día siguiente.
[5] Véase, Entrada Núm. 2 de SUMAC.
[6] Véase, Entrada Núm. 4 de SUMAC.
[7] Incluyó como anejos los siguientes documentos: Juramento; Escritura de Repudiación de Herencia, Defunción de Juan Santiago, Defunción de Ana Centeno. Certificado de Nacimiento de Carmen Louisa Santiago.
[8] Véase, Entrada Núm. 5 de SUMAC.
[9] Véase, Entrada Núm. 6 de SUMAC.

*dispone el segundo párrafo de la Regla 34 del Reglamento Notarial de Puerto Rico:*

> *Si es utilizado el reverso, bastará con poner las iniciales de los comparecientes y el sello y rúbrica del Notario en el anverso, excepto cuando el reverso constituya el final o el cierre del instrumento público.*

Razón por la cual solicitó que se tomara conocimiento de lo informado; se recibiera **la copia certificada de la escritura como su original** y se tomara conocimiento de que el instrumento fue firmado conforme las disposiciones de la Regla 34 del Reglamento Notarial de Puerto Rico.

Al próximo día, el **25 de junio de 2025**, el tribunal de instancia emitió una *Orden* en la que declaró: "*NO HA LUGAR A LA ENMIENDA A LA RESOLUCIÓN.*"[10]

En desacuerdo, el **7 de julio de 2025**, la señora Santiago Centeno radicó una *Moción de Reconsideración.*[11] Allí alegó que:

> *[l]a negativa a enmendar la resolución de declaratoria de herederos, fundamentada en la objeción sobre la escritura de repudiación, es errónea y perjudica derechos adquiridos conforme a la ley. Los argumentos para la reconsideración se basan en la validez y efectos legales de la repudiación de herencia bajo el Código Civil de 1930 y el cumplimiento de las formalidades notariales:*

En consecuencia, solicitó se reconsiderara la *Orden* del 25 de junio de 2025 y se enmendara la *Resolución de declaratoria de herederos*.

El **17 de julio de 2025**, el TPI emitió una *Orden* en la que declaró "*No Ha Lugar*" a la reconsideración presentada por la señora Santiago Centeno.[12]

Inconforme, la señora Santiago Centeno incoó el recurso de *certiorari* y señaló la comisión de los siguientes tres (3) errores:

> 1. *Erró el Tribunal de Primera Instancia al denegar enmendar la declaratoria de herederos para declarar heredera a la Peticionaria.*
> 2. *Erró el Tribunal en su apreciación de la prueba al determinar que la copia de la Escritura número 25 del 18 de abril de 2024, ante el Notario José F. Aponte Aragoneses era una copia simple, cuando era una copia*

---

[10] Véase, Entrada Núm. 7 de SUMAC.
[11] Véase, Entrada Núm. 8 de SUMAC.
[12] Véase, Entrada Núm. 9 de SUMAC.

*certificada. (Ver escritura incluida como Anejo de la Entrada 4)*

3. *Erró el Tribunal al entender que faltaba el sello y rúbrica del Notario en todos los folios, cuando la escritura autorizada fue por ambas caras del papel.*

**-II-**

**-A-**

El auto de *certiorari* es un medio procesal de carácter discrecional que, a su vez, permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior.[13] Así, se entiende por discreción como el poder para decidir en una forma u otra; esto es, para escoger entre uno o varios cursos de acción.[14]

Por ello, la Regla 52.1 de Procedimiento Civil, delimita las instancias en que habremos de atender —*vía certiorari*— las resoluciones y órdenes emitidas por los tribunales de instancia:

> *[E]l recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 <u>o de la denegatoria de una moción de carácter dispositivo</u>. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. <u>Al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión</u>. [...].[15]*

Bajo el carácter de discrecionalidad, la Regla 40 del Reglamento de este Tribunal de Apelaciones establece los siguientes criterios para mostrar causa o para la expedición del auto de *certiorari:*

> (A) *Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.*
> (B) *Si la situación de hechos planteada es la más indicada para el análisis del problema.*
> (C) *Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.*

---

[13] *Mun. de Caguas v. JRO Construction,* 201 DPR 703, 711 (2019); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337 – 338 (2012).

[14] *García v. Asociación,* 165 DPR 311, 321 (2005).

[15] Regla 52.1 de las Reglas de Procedimiento Civil 2009, 32 LPRA Ap. V., R. 52.1. *Énfasis nuestro.*

> (D) *Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.*
> (E) *Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.*
> (F) *Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.*
> (G) *Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.*[16]

En consecuencia, el Tribunal Supremo de Puerto Rico ha dispuesto que:

> *[d]e ordinario, no se intervendrá con el ejercicio de discreción de los tribunales de instancia, salvo que se demuestre que hubo un craso abuso de discreción, o que el tribunal actuó con prejuicio o parcialidad, o que se equivocó en la interpretación o aplicación de cualquier norma procesal o de derecho sustantivo, y que nuestra intervención en esa etapa evitará un perjuicio sustancial.*[17]

De manera, que si la actuación del foro recurrido no está desprovista de base razonable —ni perjudica los derechos sustanciales de las partes— deberá prevalecer el criterio del juez de instancia a quien le corresponde la dirección del proceso.[18]

**-B-**

La muerte de una persona da lugar a la apertura de la sucesión y nace el derecho de adquirir los bienes del caudal relicto para determinados parientes del difunto.[19] Si al morir el causante convergen varios herederos, estos pasan a conformar una comunidad hereditaria.[20] Durante la vigencia de la comunidad hereditaria, los herederos van a ser titulares de una cuota en abstracto sobre todos los bienes que formen parte del caudal relicto; pero no van a ser titulares de los bienes particulares.[21]

Con la muerte del causante se produce un llamamiento del heredero potencial, que ya adquirió la posesión de los bienes, para

---

[16] Regla 40 del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62 – 63, 215 DPR __ (2025).
[17] *Zorniak Air Services v. Cessna Aircraft Co.*, 132 DPR 170, 181 (1992); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).
[18] *SLG Zapata- Rivera v. JF Montalvo*, 189 DPR 414, 434 – 435 (2013).
[19] *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR 154, 177 (2005), citando *Arrieta Barbosa v. Vda. de Arrieta*, 139 DPR 525, 533 (1995).
[20] *Vega Montoya v. Registrador*, 179 DPR 80, 87 (2010).
[21] *Íd.*, pág. 89.

que repudie, acepte pura y simple o a beneficio de inventario la herencia. Si acepta, adquiere la titularidad de la herencia; **si repudia, nunca la poseyó**.[22] El Código Civil de 1930 dispone que la aceptación y repudiación de la herencia son actos enteramente voluntarios y libres y se retrotraen siempre al momento de la muerte del causante.[23] La repudiación de la herencia deberá hacerse mediante un instrumento público o auténtico, o por escrito presentado ante la sala del tribunal con competencia.[24] Este acto *"implica no querer ser heredero, es decir, es un acto de nolición, un rechazo del llamamiento que le hace el ordenamiento jurídico por estar dentro del orden y grado a los cuales se destina el caudal."*[25] El efecto de la repudiación es que el heredero adviene un extraño en la herencia de su causante.[26] Se considera que, para todos los efectos legales, el que repudia **nunca** llegó a ser heredero.[27] La aceptación o repudiación de la herencia una vez hecha es irrevocable y <u>solo podrá impugnarse</u> cuando exista alguno de los vicios del consentimiento o apareciere un testamento desconocido.[28]

**-C-**

Conforme ha sido resuelto por el Tribunal Supremo de Puerto Rico, *"[t]odo notario está obligado al cumplimiento estricto de la Ley Notarial de Puerto Rico, el Reglamento Notarial de Puerto Rico* y los cánones del *Código de Ética Profesional."*[29] Estas normas velan que el notario ejerza su labor con esmero, diligencia y celo profesional.[30]

---

[22] *Sucn. Maldonado v. Sucn. Maldonado, supra*, págs. 177-178.

[23] Aludimos a las disposiciones del derogado Código Civil de 1930 por estar vigente al momento de los hechos que generaron esta controversia. El código Civil de 1930 fue revocado y sustituido por la Ley Núm. 55-2020, conocida como el *Código Civil de Puerto Rico*. Véase, Arts. 943 y 944 del Código Civil de 1930, 31 LPRA ant. secs. 2771 y 2772.

[24] Art. 962 del Código Civil de 1930, 31 LPRA ant. sec. 2790.

[25] E. González Tejera, *Derecho de Sucesiones*, San Juan, Ed. Universidad de Puerto Rico, 2001, Tomo 1, pág. 223.

[26] *Moreda v. Rosselli*, 141 DPR 674, 688 (1996). Véase, también, E. González Tejera, *op. cit.,* pág. 227.

[27] *Moreda v. Rosselli, supra*.

[28] Art. 951 del Código Civil, 31 LPRA ant. sec. 2779.

[29] *In re Toro Imbernón*, 194 DPR 499, 504 (2016), citando a *In re Toro González II*, 193 DPR 877 (2015); *In re Ayala Oquendo*, 185 DPR 572, 580 (2012); *In re Martínez Almodóvar*, 180 DPR 805, 815 (2011). Énfasis nuestro.

[30] *Íd.*

Por lo que, al momento del notario autorizar un instrumento público, debe procurar el fiel cumplimiento de las formalidades requeridas por nuestro ordenamiento jurídico. En lo pertinente al caso que nos ocupa, el *Reglamento Notarial de Puerto Rico* dispone que:

> *Regla 34. Otorgamiento*
>
> *Todos los que comparezcan en un instrumento público firmarán al final de éste y además estamparán sus iniciales en la forma en que acostumbran hacerlo, al margen de cada hoja del instrumento, que rubricará y sellará el notario. No será necesario que los comparecientes estampen sus iniciales en los documentos anejados. **Si es utilizado el reverso, bastará con poner las iniciales de los comparecientes y el sello y rúbrica del notario en el anverso, excepto cuando el reverso constituya el final o el cierre del instrumento público.**[31]*

Así pues, *"[c]uando un notario autoriza una escritura, asevera bajo la fe pública que la transacción es válida y legítima."[32]* Lo antes dicho tiene el siguiente efecto: *"[a]nte ello, el Estado le confiere al documento autorizado por el notario una presunción de credibilidad y certeza de que lo afirmado es cierto y correcto, y que concuerda con la realidad."[33]*

En lo concerniente a nuestra controversia, la *Ley Notarial de Puerto Rico,* autoriza a los notarios expedir copias, ya sean simples o certificadas, de los instrumentos que estos otorguen:

> *Se faculta al notario a expedir copias certificadas, fotográficas o copias reproducidas por cualquier otro medio electrónico de escrituras matrices, <u>las cuales una vez certificadas por el notario serán consideradas válidas para todos los efectos legales</u>.[34]*
>
> *Los notarios podrán expedir copias simples de documentos matrices a solicitud de las mismas personas con derecho a solicitar copias certificadas, pero sin garantía por la transcripción del instrumento. Tales copias no llevarán firma, sello o rúbrica, ni de su saca se pondrá nota al margen de la escritura matriz[.][35]*

---

[31] Reglamento Notarial de Puerto Rico, T. 4 Ap. XXIV, R. 34. Énfasis nuestro.
[32] *In re Toro Imbernón, supra,* a la pág. 505, citando a *In re Feliciano Ruiz,* 117 DPR 269, 275 (1986).
[33] *Íd.*
[34] Art. 45 de la *Ley Notarial de Puerto Rico,* 4 LPRA § 2067. Subrayado nuestro.
[35] Art. 46 de la *Ley Notarial de Puerto Rico,* 4 LPRA § 2068.

Según se desprende de la propia ley, una copia certificada se define como:

> *[e]l traslado literal, total o parcial que de un documento otorgado ante notario, que libre éste o el que tenga legalmente a cargo su Protocolo, con certificación respecto a la exactitud del contenido y a número de folios que contenga el documento, así como la firma, signo y rubrica y, en todos los folios, el sello y rúbrica del notario autorizante.*[36]

En vista de que la copia certificada asevera la exactitud del instrumento público al que se refiere, al emitir una copia certificada, el notario autorizante deberá cumplir con una serie de formalidades, para que esta constituya un título perfecto.[37] El Reglamento Notarial provee para ello:

> *Regla 49. Certificación de copia*
>
> *(a) La certificación de una copia será efectuada al final o a continuación del instrumento. En el caso de que hayan sido incorporados documentos al instrumento, la certificación los incluirá y ésta será efectuada al final o a continuación de éstos.*
> *(b) La certificación expresará el número de folios del instrumento, incluso los folios de los documentos que le hayan sido incorporados. Será suficiente con indicar en guarismo los folios que éste contiene sin considerar el reverso, aunque esté escrito y numerado.*
> *(c) La certificación de una copia expresará que en el original aparecen:*
> > *(1) Las firmas e iniciales de los comparecientes,*
> > *(2) la firma, rubrica, signo y sello del notario,*
> > *(3) la cancelación de las estampillas de rentas internas y del impuesto notarial.*
> *(d) La certificación indicará, además:*
> > *(1) El número de folios que comprende,*
> > > *(2) la certificación de concordancia total o parcial con el original. En caso de certificación parcial el notario hará constar que en lo omitido no hay nada que restrinja, modifique o condicione lo insertado,*
> > *(4) [sic] el lugar y fecha de su expedición,*
> > *(5) el nombre de la persona a favor de quien es expedida la copia,*
> > *(6) que los documentos incorporados son copia fiel y exacta de los originales unidos a la matriz.*
> *(e) Todos los folios de la copia certificada, incluso los incorporados, llevarán el sello y rúbrica del notario. Si el reverso estuviere escrito, bastará con que el notario rubrique y selle el anverso, excepto cuando el reverso constituya el final o el cierre del instrumento público.*[38]

Es decir, *"[u]na copia certificada de una escritura pública acredita las constancias que aparecen en el instrumento público*

---

[36] Art. 39 de la *Ley Notarial de Puerto Rico,* 4 LPRA § 2061.
[37] *In re Toro Imbernón, supra,* a la pág. 506.
[38] Reglamento Notarial de Puerto Rico, T. 4 Ap. XXIV, R. 49.

*original atado al protocolo del notario."*[39] Ello pues, en *"[l]a copia certificada, el notario da fe de que en el original aparecen las iniciales y las firmas de las personas otorgantes y el notario la firma, signa, rubrica, estampa sello notarial y cancela los aranceles de rentas internas y sellos notariales, entre otros."*[40]

**-III-**

En el caso de autos, la señora Santiago Centeno nos señala, en síntesis, que incidió el tribunal de instancia al: (1) denegar enmendar *Resolución* en la cual se declaró Con Lugar la *Petición* de la declaratoria de herederos para declararle heredera; (2) al determinar que la copia de la Escritura Número 25 expedida por el Notario José F. Aponte Aragoneses era una copia simple y no una copia certificada; (3) al entender que faltaba el sello y rúbrica del notario en todos los folios, aun cuando la escritura autorizada fue por ambas caras del papel. Tiene razón. Veamos.

De umbral, atenderemos los errores que aluden a la copia certificada de la escritura de referencia. Por estar íntimamente relacionados, los atenderemos en conjunto.

**En primer orden**, del expediente ante nos surge que el señor Santiago Ferreira repudió la herencia del causante el 18 de abril de 2024 mediante la Escritura Pública Número 25, otorgada ante el notario José Fernando Aponte Aragoneses.[41] Ese mismo día, el notario Aponte Aragoneses fijó una nota al margen izquierdo de la escritura matriz en la que dio fe de la expedición de la primera copia certificada. De dicha copia certificada se desprende que el notario Aponte Aragoneses dio fe que, en el instrumento público, el señor Santiago Ferreira fijó sus iniciales al margen izquierdo del anverso de todos y cada uno de los folios y firmó al final del último. Además,

---

[39] *In re Alomar Santiago,* 211 DPR 265, 274 (2023). *In re Toro Imbernón, supra,* a la pág. 506, citando a *In re Torres Olmeda,* 145 DPR 384, 390–391 (1998).
[40] *Íd.*
[41] Véase, Entrada Núm. 4 de SUMAC.

el notario Aponte Aragoneses dio fe de que firmó, signó, selló y rubricó el instrumento público de referencia. De igual forma, hizo constar en la copia certificada que en el original aparecen las firmas e iniciales del señor Santiago Ferreira, así como la firma, rúbrica, signo y sello suyo como notario.

A tono con lo antes expuesto, y el derecho esbozado previamente, no hay duda de que el notario Aponte Aragoneses cumplió con las formalidades requeridas al expedir una copia certificada, conforme preceptuado en nuestro ordenamiento jurídico. Colegimos entonces que este actuó correctamente al plasmar solo en el anverso de los folios de la copia certificada su sello y rúbrica. Ello dado que, el reverso de los folios no constituyó el final, ni el cierre del instrumento público.

**En segundo orden**, atenderemos el error que se refiere a la denegatoria del tribunal de instancia a enmendar la declaratoria de herederos para declarar heredera del causante a la señora Santiago Centeno.

A todas luces, es evidente que se trata de una **copia certificada**, pues se incluyó la certificación para ello, la correspondiente nota de saca, así como la firma, sello y rúbrica del notario autorizante Aponte Aragoneses.

Por lo tanto, habiendo aclarado que en el caso de epígrafe el documento presentado por la señora Santiago Centeno es una **copia certificada** de la Escritura de Repudiación de Herencia otorgada por el señor Santiago Ferreira, procede que el tribunal de instancia lo admita y lo tome como cierto.

Así pues, corresponde que el TPI evalúe los documentos presentados por la señora Santiago Centeno, de modo que se pueda dirimir si la peticionaria es la llamada a heredar en este caso.

**-IV-**

Por los fundamentos antes expuestos, se **expide** el auto de *certiorari* y se **revoca** la *Orden* recurrida. En consecuencia, se devuelve el caso al tribunal de instancia para la continuación de los procedimientos.

Lo acordó el Tribunal y lo certifica la secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones